Keith and Pam NETTESHEIM, Matthew and Christy McBride, David and Janet Carpenter and William and Mary Berger, Plaintiffs-Respondents,

v.

S.G. NEW AGE PRODUCTS, INC., Defendant-Appellant.

Court of Appeals

*No. 2005AP287–FT. Submitted on briefs April 21, 2005. —Decided June 28, 2005.*

2005 WI App 169

(Also reported in 702 N.W.2d 449.)

665

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John L O'Brien* of *O'Brien, Anderson, Burgy, Garbowicz & Brown, LLP* of Eagle River.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Mitchell R. Olson* of *Eckert, Kost & Vocke LLP*.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. S.G. New Age Products, Inc. ("New Age") appeals a decision granting summary judgment to the Nettesheims, McBrides, Carpenters, and Bergers ("Nettesheims") and an order permanently enjoining it from conveying additional fractional shares in a road, known as Outlot 1, which New Age and the Nettesheims own as tenants in common.[1]

¶ 2. This dispute between a property developer and Rice Creek subdivision landowners arises from New Age's efforts to use Outlot 1 and a road built across one of the Rice Creek lots as access roads for a second subdivision. New Age argues it was an error to find, based on analogies between the co-tenants' fractional interest in Outlot 1 and non-exclusive easements, that traffic from the new subdivision would overburden the common property. New Age also argues the circuit court erred when it determined that the Rice Creek Declaration of Covenants, Conditions and Restrictions bars the use of Outlot 1 for access to the new development because the covenants do not explicitly restrict road use to Rice Creek lot owners. Finally, New Age contends that even if we agree its right to convey its property in Outlot 1 is limited by a need to avoid overburdening the road, the circuit court should not have granted summary judgment to the Nettesheims because material facts are still at issue.[2]

¶ 3. We reject all New Age's arguments and affirm the judgment and order of the circuit court.

---

[1] This is an expedited appeal under WIS. STAT. RULE 809.17. All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] The standard to be applied to such claims is established by statute, WIS. STAT. § 802.08(3).

## BACKGROUND

¶ 4. In the mid-1990s, Taylor Investment Company created a subdivision in rural Vilas County near Rice Creek. The subdivision, named for that landmark, consisted of fourteen lots and the sixty-six-foot private road, known as Outlot 1 that provided access to the lots. Outlot 1 is roughly T-shaped. The trunk of the T connects the subdivision to a public road. The two arms of the T run north and south, dead-ending near the boundaries of the subdivision. All deeds to the Rice Creek lots included an undivided 1/14th interest in Outlot 1 and the lot owners were to share equally in maintaining the road.

¶ 5. Some time later, New Age purchased thirty-three acres north of, and immediately adjacent to, Rice Creek subdivision, which it planned to develop as a second subdivision. At the same time, it also bought Lot 9 in Rice Creek, located in the far northwest corner of the older subdivision. The new subdivision, Balsam Rapids, was to be divided into nine lots. To provide access to Balsam Rapids, New Age built a road across Lot 9, extending to Outlot 1. Buyers in Balsam Ridge would thus receive, in addition to their lots, a 1/9th interest in the road that ran over Lot 9 and 1/9th interest in New Age's 1/14th interest in Outlot 1.

¶ 6. In October 2004, after the Vilas County Zoning Committee approved the Balsam Rapids plat, the Nettesheims sued New Age, requesting injunctive and

When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of the pleadings but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party.

declaratory relief. New Age moved for summary judgment on the grounds that its ownership of an undivided fee interest in Outlot 1 gave it the right to convey that interest either wholly or in smaller fractions. The Nettesheims countered that the proposed use violated both their rights as tenants in common and the subdivision's restrictive covenant; they also moved for summary judgment.

¶ 7. In January 2005, in a written decision, the circuit court determined that the practice of conveying fractional interests in private roads was consonant with the law of co-tenancy. If a disagreement arose among co-tenants, the remedy of partition was ordinarily available.[3] Here, however, the court reasoned, that remedy was illogical because ownership interest in Outlet 1 could not be severed from lot ownership. Based on equitable considerations, the court thus declared that New Age's proposed use of Outlot 1 would overburden the private road that was the common property at issue. It also concluded the use was barred by the restrictive covenants. The circuit court then permanently enjoined New Age from "passing unwanted Balsam Rapids subdivision traffic over Outlot 1 by conveying additional fractional interests" unless it obtained the permission

---

[3] WISCONSIN STAT. § 842.02 codifies the common law of partition, an equitable action. *See, e.g., Klawitter v. Klawitter,* 2001 WI App 16, ¶ 7, 240 Wis. 2d 685, 623 N.W.2d 169; *Kubina v. Nichols,* 241 Wis. 644, 648, 6 N.W.2d 657 (1942). Under the partition statute, a party "having an interest in real property jointly or in common with others" may sue for judgment partitioning that interest unless such an action is prohibited by statute or by agreement between the parties. WIS. STAT. § 842.02(1). When physical partition is impossible, the court may order the land sold and the proceeds of that sale divided. *See* WIS. STAT. § 842.02(2).

of two-thirds of Rice Creek lot owners. New Age now appeals.

## DISCUSSION

### *Standard of Review*

¶ 8. We review summary judgment decisions without deference, applying the same standards and methodology as the circuit court. *See Smith v. Dodegeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31 (Ct. App. 1997). We look at the complaint first to see whether it states a claim, and then ask whether the answer raises a material issue of fact or law. *See id.* If the complaint and answer are sufficient, we turn to the moving party's affidavits. *See id.* at 232–33. If the affidavits establish a prima facie case for summary judgment, we examine the opposing party's affidavits to determine whether there are material facts in dispute that entitle the opposing party to a trial. *See id.* at 233.

¶ 9. Whether to grant injunctive relief is, by contrast, addressed to the sound discretion of the circuit court. *See Pure Milk Prods. Coop. v. National Farmer's Org.*, 90 Wis. 2d 781, 800, 280 N.W.2d 691 (1979). When we review the circuit court's exercise of discretion, we examine the record to determine whether the court logically interpreted the facts, applied the proper legal standard, and used a demonstrated rational process to reach a conclusion that a reasonable judge could reach. *See State v. Keith*, 216 Wis. 2d 61, 69, 573 N.W.2d 888 (Ct. App. 1997).

## Overburdening the Common Estate

■

¶ 10. When the original developer deeded a 1/14th interest in Outlot 1 to each Rice Creek lot buyer, it created a tenancy in common. A tenancy in common is defined as a "tenancy by two or more persons, in equal or unequal undivided shares, each person having an equal right to possess the whole property but no right of survivorship." BLACK'S LAW DICTIONARY 1507 (8th ed. 2004). As tenants in common, the owners of Outlot 1 have the right to sell their interests outright. *See, e.g., Elfelt v. Cooper*, 168 Wis. 2d 1008, 1023, 485 N.W.2d 56 (1992). They also, as New Age asserts, have the right to sell or convey fractional parts of their undivided interest in the whole property. *See id.* Based on that right, New Age apparently argues that the circuit court, acting in equity, erred when it found that New Age's proposed use of Outlot 1 would overburden the common estate. We are not persuaded.

¶ 11. Although no Wisconsin case law explicitly addresses this question, New Age suggests that *Butler v. Craft Eng. Constr., Inc.*, 843 P.2d 1071 (Wash. Ct. App. 1992), provides persuasive authority for its argument. We disagree. *Butler* also involved a private road in a subdivision and tenancy in common, but the Washington Court of Appeals' decision does not suggest that tenants in common have an unlimited right to sell or convey fractional shares in a private roadway. Rather, according to *Butler*, a co-tenant's right to lease, sell, or otherwise dispose of its interest in the common property without the consent of co-tenants is limited by an obligation not "to interfere with the coequal rights of other tenants." *Id.* at 1078. The court went on to explain "it would be possible, by virtue of sheer volume

of traffic, to so congest a commonly owned roadway that the right of any given tenant to possess, use and enjoy the road would be impermissibly interfered with." *Id.* at 1079. While the court did not find that degree of interference in the facts before it, where use was being expanded from two lots to three, it noted that under more extreme circumstances a request for injunctive relief could provide an adequate remedy. *See id.*

¶ 12. New Age suggests the circuit court placed new meaning on tenancy in common when it found that such tenancy "implies some commonality of interest," a finding "unsupported by any appellate court holding." New Age both overstates the circuit court's holding and misreads Wisconsin law.

¶ 13. The phrase cited by New Age comes from a portion of the circuit court's decision distinguishing New Age's motives for purchasing a lot in Rice Creek from those of the Nettesheims and their neighbors. The court observed that, unlike the other lot owners, New Age "never intended to establish a residence in Rice Creek or share the roadway as a neighbor." In that context, it concluded, New Age did not buy as an ordinary tenant in common, which "implies some commonality of interest." As a characterization of New Age's motives, this conclusion seems unassailable, particularly because New Age admits it bought Lot 9 for the sole purpose of putting a road across it.

■

¶ 14. But even if New Age were correct in its characterization of the circuit court's statement, both the principles of co-tenancy and Wisconsin law provide support for that statement. Numerous treatises characterize tenancy in common as a relation that ordinarily entails a community of interest, giving rise to a peculiar relationship of mutual trust and confidence in

respect of the common estate. *See, e.g.,* 20 AM. JUR. 2D *Cotenancy and Joint Ownership* § 2 (1995). And Wisconsin law recognizes that because a tenancy in common involves shared interest in a common title, it creates a community of interest among a group of owners that would make "it inequitable to permit one of them to do anything to the prejudice of the others." *Hunter v. Bosworth,* 43 Wis. 583, 593 (1878).

¶ 15. Thus while the circuit court explicitly adopts the reasoning of a Texas Court of Appeals case, *Barstow v. State,* 742 S.W.2d 495 (Tex. App. 1987), to explain its decision that New Age's rights to convey fractional interests in Outlot 1 cannot prejudice the rights of its co-tenants, that decision reflects a principle firmly established in Wisconsin law. We therefore agree that, under these circumstances, New Age could not convey so many fractional interests in Outlot 1 that it overburdened the common estate.

¶ 16. Affidavits and other evidence offered by the Nettesheims asserted that conveying an additional nine fractional interests in Outlot 1 would increase traffic on the road—and thus also increase maintenance costs, decrease privacy, and diminish property values. New Age offered no evidence to the contrary, apparently relying solely on the claim that a co-tenant's right to convey fractional interests in his or her property is unlimited. The record thus provides a reasonable basis for the circuit court's conclusion that conveying nine more fractional shares in Outlot 1 would burden the common estate so heavily it would prejudice the Nettesheims' rights as co-tenants.

## The Restrictive Covenants

■■■■

¶ 17. Alternatively, we also agree with the trial court's conclusion that such use was barred by the restrictive covenants. The interpretation of written covenants affecting land is a question of law we review independently. *See Zinda v. Krause*, 191 Wis. 2d 154, 165, 528 N.W.2d 55 (Ct. App. 1995). Whether the language of a restrictive covenant is ambiguous is also a question of law. *See id.*

■■■

¶ 18. New Age's argument with respect to the restrictive covenants is short and largely conclusory. New Age correctly contends "it is axiomatic" that covenants intended to limit property use must be clearly stated and strictly construed because public policy favors the "unencumbered and free use of property." *Crowley v. Knapp*, 94 Wis. 2d 421, 434, 288 N.W.2d 815 (1980). New Age then asserts that the absence of any language explicitly restricting the use of Outlot 1 to Rice Creek lot owners is sufficient to establish that the original developers did not intend such a restriction.

¶ 19. The Nettesheims counter that where "the intent of the restrictive covenant can be clearly ascertained from the covenant itself, the restrictions will be enforced." *Zinda*, 191 Wis. 2d at 166. They argue that Article I, the General Purpose section of the restrictive covenant document, and Article II, barring anything "which may become an annoyance or nuisance to the neighborhood," expresses intentions that are contravened by New Age's proposed use of Outlot 1. We agree.

¶ 20. According to Article I, the purpose of the Rice Creek Declaration is to

> insure the best use and the most appropriate development and improvement of the [s]ubject [p]roperty; to protect owners . . . against such use of surrounding property as will detract from the value of their property; to preserve, so far as practicable, the natural beauty of [s]ubject [p]roperty; to insure the highest and best development of [s]ubject [p]roperty . . . .

As the circuit court observed, when Rice Creek lot owners purchased property, they did so knowing that Outlot 1 was a private road that served only the fourteen lots in the subdivision and knowing that they would be equally responsible with their neighbors for maintaining that road. The intent of the original developer was, as Article I makes clear, to preserve the "natural beauty" of a rural forested development whose only means of access was a dead-end road. According to evidence submitted by the Nettesheims, New Age's proposed use of Outlot 1 could add between 108 and 180 extra vehicle drive-bys a day, particularly affecting the properties on the dead-end of Outlot 1 nearest Lot 9. Additional traffic would add to the costs of maintaining Outlot 1. Increased traffic, including the traffic associated with building homes in Balsam Rapids, would also be detrimental to the "natural beauty" of the area. Because those who choose to live on dead-end roads in rural seclusion value their property, at least in part, because of its "natural beauty," use that destroys that character will "detract from" their property's value. We thus agree with the circuit court that Rice Creek's restrictive covenants would bar New Age's proposed use of Outlot 1.

### The Permanent Injunction

¶ 21. To obtain an injunction, the moving party must show there is a sufficient probability that the

future conduct of the opposing party will violate a right of the movant. *See Pure Milk Prods.*, 90 Wis. 2d at 800. The movant must also establish that the injury would be irreparable—not adequately compensable by money damages—and that, on balance, equity favors issuing the injunction. *See id.* Whether the movant has met that burden is a decision left to the sound discretion of the circuit court. *Zinda*, 191 Wis. 2d at 174–75.

¶ 22. As we have already discussed, the circuit court's decision indicates that it applied the appropriate law and principles of equity to conclude that the Nettesheims had rights, under Rice Creek's restrictive covenants and as co-tenants, that New Age's proposed use of Outlot 1 would violate. The court found, albeit somewhat obliquely, that an increased flow of traffic through Outlot 1 would irreparably injure the Nettesheims' peace of mind and their residential seclusion, injuries not adequately compensable by money, and that, on balance, equity favored issuing the injunction. Those findings were based on a record that consisted of affidavits and other papers filed by the plaintiffs. The court thus applied the appropriate legal principles to effectively undisputed facts, and used a demonstrated rational process to reach a conclusion that a reasonable judge might have reached. We discern no error in that process.

¶ 23. New Age argues finally that, even if we accept the circuit court's premise that additional users could overburden Outlot 1, the circuit court erred by granting summary judgment because material facts are still at issue. New Age does not identify which material facts in particular it contests. It rather objects to the fact that four of the Nettesheims' affidavits were filed one day before the hearing on summary judgment and

677

two more were filed after the hearing, concluding that "[I]f the trial court felt that over-burdening . . . was truly an issue, it . . . had the option to . . . set the matter for trial."

¶ 24. It was New Age's choice, however, not to submit affidavits or otherwise contest the facts presented by the Nettesheims. The circuit court noted at the summary judgment hearing that the "only facts in the record" were "those submitted by the plaintiffs." New Age did not object to the admission of the Nettesheims' affidavits nor is there any indication that it objected to the court's characterization of the record before it. New Age cannot now claim that the circuit court erred by granting summary judgment because it might have contested facts but chose not to. *See* WIS. STAT. § 802.08(3).

*By the Court.*—Judgment and order affirmed.