STATE of Wisconsin, Plaintiff-Appellant,

v.

CGIP LAKE PARTNERS, LLP and
Catherine deBarros, Respondents-Respondents.

Court of Appeals

*No. 2012AP2346. Submitted on briefs August 6, 2013.
—Decided September 10, 2013.*

2013 WI App 122

(Also reported in 839 N.W.2d 136.)

100

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Lorraine C. Stoltzfus*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the respondents-respondents, the cause was submitted on the brief of *John B. Wagman* of *Mallery & Zimmerman, S.C.*, Wausau.

Before Hoover, P.J., Mangerson and Stark, JJ.

¶ 1. STARK, J. The State filed this enforcement action against CGIP Lake Partners, LLP, and Catherine deBarros, alleging they violated Wis. Stat. § 281.36(2)(a) (2009–10),[1] by constructing a road through a parcel of wetland without first obtaining a water quality certification from the Department of Natural Resources (DNR). The circuit court agreed that CGIP and deBarros violated the statute, and it ordered them to pay penalties and attorney fees. However, the court denied the State's request for an injunction requiring CGIP and deBarros to remove the road and restore the wetland.

¶ 2. The State appeals, arguing the court erroneously exercised its discretion by failing to order removal of the road. We agree. Under *Forest County v. Goode*, 219 Wis. 2d 654, 579 N.W.2d 715 (1998), the court was required to grant the injunction unless CGIP and deBarros established compelling equitable reasons to deny injunctive relief. Although it purported to apply the *Goode* standard, the court actually placed the

---

[1] Because Wisconsin Stat. § 281.36 was extensively revised in 2012, *see* 2011 Wis. Act 118, §§ 57–118, we refer to the 2009–10 version of the statute, which was in effect when the violation occurred. All other references to the Wisconsin Statutes are to the 2011–12 version.

burden on the State to show specific instances of environmental harm caused by the road. By applying an incorrect legal standard, the court erroneously exercised its discretion. The court also erroneously exercised its discretion by failing to base its decision on the facts of record, substituting its own lay opinions for the State's undisputed expert testimony, failing to give appropriate weight to the previous decisions of this court and an administrative law judge, and giving undue weight to certain factors. We therefore reverse that portion of the judgment denying the State's request for injunctive relief. We remand with directions that the court enter an order requiring CGIP and deBarros to remove the road and restore the wetland, pursuant to the DNR's restoration plan.

## BACKGROUND

¶ 3. In April 2002, deBarros acquired a parcel of property on Birch Lake in Forest County from CGIP, a limited liability partnership made up of deBarros and her three brothers. The deed granted deBarros a permanent easement for ingress and egress over certain roads traversing neighboring property owned by CGIP. deBarros built a residence on the Birch Lake property in 2003 and 2004, using the roads through CGIP's property for access.

¶ 4. deBarros subsequently determined she could shorten the route to her property by 1.2 miles by building a new road across part of CGIP's property. However, because the new road would bisect a ten-acre wetland, deBarros needed to obtain a water quality certification from the DNR before beginning construction. *See* Wis. Stat. § 281.36(2)(a) (2009–10). She applied for a water quality certification on April 26, 2006,

alleging she needed the new road to access her property because the "[a]ccess currently used is not permanent."

¶ 5. It is undisputed that the DNR used the incorrect procedure to process deBarros' application. Because deBarros' project involved a wetland located above the ordinary high water mark of a navigable water body, the DNR should simply have made a final decision on her application and then issued a notice giving the public thirty days to request an administrative hearing. *See deBarros v. DNR*, No. 2009AP551, unpublished slip op. ¶ 3 n.1 (WI App June 8, 2010). Instead, the DNR used the procedure for projects involving wetlands located below the ordinary high water marks of navigable water bodies. *Id.* Under that procedure, the DNR issues a tentative decision on an application and gives the public thirty days to submit comments or request an informational hearing. *Id.* At the end of the public comment period, the DNR issues a final decision, and the public then has an additional thirty days to request an administrative hearing. *Id.*

¶ 6. Using the incorrect procedure, the DNR issued a tentative decision granting deBarros' application on August 24, 2006. The DNR relied on deBarros' representation that she would be unable to access her property without the proposed road and on WIS. ADMIN. CODE § NR 103.08(4)(a)1. and 2., which require the DNR to authorize a wetland fill project if no practicable alternative exists and the project minimizes adverse impacts to the wetland. The DNR did not receive any comments during the thirty-day public comment period. Consequently, it issued deBarros a water quality certification on October 6, 2006. A "Notice of Appeal Rights" included with the certification informed deBarros that members of the public had thirty days to request an administrative hearing. deBarros neverthe-

less went ahead with construction of the road. On November 3, 2006, four of deBarros' neighbors requested an administrative hearing.

¶ 7. During the administrative hearing, it became apparent that deBarros' claim that she needed the new road to access her property was false. The administrative law judge (ALJ) found that deBarros had a permanent right to access her property using the existing roads through CGIP's property and that deBarros, or persons acting on her behalf, knew or should have known any representations to the contrary were "false and inaccurate." The ALJ ultimately issued an order denying deBarros' application for a water quality certification. The ALJ concluded deBarros had a practicable alternative means of accessing her property, and the proposed new road would "result[] in significant adverse environmental impacts to wetland functional values or uses of the affected wetland[.]" The ALJ further found these adverse impacts would "extend substantially beyond the approximate 0.092–acre footprint of the roadbed." In addition, the ALJ rejected deBarros' argument that her neighbors' request for an administrative hearing was untimely because the DNR used the incorrect procedure to process her application.

¶ 8. deBarros petitioned for judicial review of the ALJ's decision, and the circuit court reversed. The court concluded the DNR's failure to follow the proper procedure violated deBarros' constitutional rights to fundamental fairness, due process, and equal protection. On appeal, we reversed the court's order, concluding deBarros had not established a violation of her constitutional rights. *See deBarros*, unpublished slip op. ¶¶ 1, 9. We also determined the ALJ's decision to deny deBarros a water quality certification was reasonable and supported by substantial evidence. *Id.*, ¶¶ 10–16. We spe-

cifically concluded deBarros had "obtained a certification based upon inaccurate, incomplete and misleading information[,]" and we therefore determined she "lacked clean hands." *Id.*, ¶ 16 n.3.

¶ 9. The DNR asked deBarros to remove the road, but she failed to do so. As a result, on April 28, 2011, the State filed the instant enforcement action against deBarros and CGIP, seeking forfeitures and an order requiring them to remove the road and restore the wetland. The State subsequently moved for summary judgment as to liability, and the circuit court granted its motion.

¶ 10. A remedies hearing was held on February 13, 2012. DNR water management specialist Robert Rosenberger testified for the State. Rosenberger stated he had worked as a water management specialist since 1992 and had processed 835 permits related to wetlands and waterways in the five years preceding the hearing. He explained he was asked to testify at the hearing because the DNR employee who had previously handled deBarros' case had retired. Rosenberger admitted he had only been involved in the case for "a few weeks" and had never personally visited the site. However, he testified he had reviewed the DNR's file on deBarros' project, as well as photographs of the site and the ALJ's decision denying the water quality certification. Based on his review of these materials, Rosenberger testified the area deBarros' road crosses is an "undisturbed" and "pristine" sedge meadow wetland, which is a "relatively rare wetland area in the State of Wisconsin." He characterized deBarros' construction of the road without a certification as a "highly serious violation."

¶ 11. Rosenberger testified that wetlands serve important environmental functions, including filtering pollutants from the water supply, trapping surplus

water to reduce flooding, and providing valuable habitat for fish and other wildlife. He stated wetlands "play an integral part of protecting our tourism economy and helping to protect our fish and wildlife population." He further testified the wetland bisected by deBarros' road is "especially important" because it is only one-quarter of a mile from Birch Lake. He explained that wetlands close to navigable water provide fish with a place to spawn and provide habitat for creatures like frogs and minnows. He stated, "Frogs . . . migrate a quarter of [a] mile and big or minor critters will use this wetland and will use the lake and are an important part of the system."

¶ 12. Rosenberger also testified that building a road through a wetland harms the environment by fragmenting the area, making it a less desirable habitat for species that "need to move through [an] . . . undisturbed wetland." In addition, the process of building a road can harm a wetland by introducing invasive species. Rosenberger explained that, when a wetland is damaged, the effects extend beyond the wetland's borders and "impact[] the fish and wildlife habitat in our waterways."

¶ 13. Rosenberger further testified he has dealt with dozens of cases in which the DNR required landowners to remove illegally deposited fill from wetlands. Based on this experience, he opined that wetland restoration is "a relatively simple procedure." He acknowledged that "some people" object to wetland restoration on the ground that "more harm will come by removing the fill than by leaving it in." However, he asserted "[t]hat is not correct" if a proper restoration plan is used. He testified the DNR's plan to remove deBarros' road was a proper restoration plan. He also asserted that, in this case, removing the road was the only way to restore the wetland.

¶ 14. In response to Rosenberger's testimony, the circuit court expressed concern that removing the road could introduce invasive species to the area. Rosenberger explained:

> Best way to handle that [is] for the contractor to use a spore sprays power wash, wash it all off, all of this equip before they bring it onto the property. That way mud and seeding and foreign species aren't transported onto the property. Then they come in with their clean equipment and pick the material up and put it in the dump truck, drive it away. Part of the plan, that they are to seed it down right away with fast growing rye so that rye will block out the chance of any nonnative species to become established . . . .

> These wetlands are a very rich area of tremendous seed banks. Once that fill is removed those seeds will be able to—existing seeds that are there that are just covered temporarily by the dirt when they are back in the light and warm and moisture, they will sprout and again become established.

> I worked on logging roads that were put in in violation, loggers built a road through a wetland area and then they remove it. I come back a year later and everything is fine and grows back up. It is an acceptable proven method.

Rosenberger also testified it is typical to hire an environmental consultant to monitor the area for up to five years. If the consultant observes any invasive species, herbicides can be applied to kill them.

¶ 15. When questioned by the court, Rosenberger acknowledged that deBarros' water quality certification required her to take certain steps to minimize environmental harm, such as placing culverts under the road. However, Rosenberger testified that, despite these measures, some impacts were "unavoidable." He asserted the DNR only allowed deBarros to build the road

because it was under the impression she had no other way to access her property. He stated, "[W]e will not tell someone that they can't get to their house."

¶ 16. The only witness to testify on behalf of de-Barros and CGIP was deBarros' father, Gordon Connor. Connor was not qualified as an expert witness, and the substance of his testimony was rather limited. He testified he was familiar with the area in question, which he described as "just a bunch of weed." He also disputed the characterization of the area as a wetland, stating, "There has never been any water in this property. Certainly no fish in."[2] The remainder of Connor's testimony was devoted to disputing the ALJ's finding that deBarros knew or should have known her water quality certification application contained false representations. However, Connor conceded he had not appeared at the administrative hearing to testify about that issue.

¶ 17. At the close of the remedies hearing, the court ordered deBarros and CGIP to pay penalties and attorney fees totaling $30,135.85, but it denied the State's request for injunctive relief. The State moved for reconsideration of the court's decision to deny injunctive relief, arguing that, under *Goode*, 219 Wis. 2d 654, the court was required to grant the injunction unless it found compelling equitable reasons not to do so. The court agreed to reconsider its prior ruling, and it acknowledged that *Goode* set forth the applicable

---

[2] Rosenberger explained that the wetland was in the midst of "a prolonged drought period" at the time of the hearing. He testified, "When we get back to normal water condition . . . I know there will be standing water in here that will provide habitat." He based his conclusion on "20 years of experience watching drought cycles[.]" In addition, he testified that photographs of the wetland showed it was dominated by lake sedge. He explained that, if the area were not periodically covered by water, other plant species would have become established.

framework for its decision. However, the court concluded that, even under *Goode*, the State was not entitled to injunctive relief because there were compelling equitable reasons to deny the injunction.

¶ 18. The State now appeals that portion of the circuit court's judgment denying its request for injunctive relief. Additional facts are included in the discussion section.

## DISCUSSION

¶ 19. Whether to grant or deny an injunction is committed to the circuit court's discretion. *Nettesheim v. S.G. New Age Prods., Inc.*, 2005 WI App 169, ¶ 9, 285 Wis. 2d 663, 702 N.W.2d 449. A court properly exercises its discretion when it logically interprets the facts, applies the proper legal standard, and uses a demonstrated rational process to reach a conclusion a reasonable judge could reach. *See id.* In addition, when considering a request for injunctive relief, a court erroneously exercises its discretion by: (1) failing to consider and make a record of the factors relevant to its determination; (2) considering clearly irrelevant or improper factors; or (3) clearly giving too much weight to one factor. *School Dist. of Slinger v. Wisconsin Interscholastic Athletic Ass'n*, 210 Wis. 2d 365, 370, 563 N.W.2d 585 (Ct. App. 1987).

¶ 20. To grant an injunction, a court must typically find that the movant has no adequate remedy at law and will suffer irreparable harm if the injunction is not granted. *See Allen v. WPSC*, 2005 WI App 40, ¶ 30, 279 Wis. 2d 488, 694 N.W.2d 420. However, because this case involves the enforcement of a wetland protection

statute, the State argues we should review the circuit court's denial of injunctive relief using a different standard. Specifically, the State urges us to apply the standard set forth in *Goode*, 219 Wis. 2d 654.

¶ 21. *Goode* involved a landowner's violation of a county's shoreland zoning ordinance. *Id.* at 658–59. The county sought an injunction requiring the landowner to bring his property into compliance, but the circuit court denied its request. *Id.* at 659. On appeal, our supreme court held that "once a violation [of a shoreland zoning ordinance] is established, a circuit court should grant the injunction except, in those rare cases, when it concludes, after examining the totality of the circumstances, there are compelling equitable reasons why the court should deny the request for an injunction." *Id.* at 684. The court further explained that, in making this determination, a circuit court should

> take evidence and weigh any applicable equitable considerations including the substantial interest of the citizens of Wisconsin in the vigilant protection of the state's shorelands, the extent of the violation, the good faith of other parties, any available equitable defenses such as laches, estoppel or unclean hands, the degree of hardship compliance will create, and the role, if any, the government played in contributing to the violation.

*Id.*

¶ 22. Although *Goode* is a shoreland zoning case, the State argues its methodology is equally applicable to cases involving violations of wetland protection statutes. deBarros and CGIP concede that *Goode* applies in this case.[3] We agree. This court has already extended

---

[3] Although deBarros and CGIP concede that *Forest County v. Goode*, 219 Wis. 2d 654, 579 N.W.2d 715 (1998), governs this case, they also suggest that, in order to obtain an injunction, the

*Goode*'s methodology beyond shoreland zoning cases. *See State v. Poehnelt*, No. 2009AP981, unpublished slip op. (WI App Nov. 24, 2009). In *Poehnelt*, the State requested injunctive relief after a landowner violated Wɪs. Sᴛᴀᴛ. § 30.19(1g)(a) by constructing an artificial body of water connected to a navigable waterway without a permit. *Poehnelt*, unpublished slip op. ¶¶ 2–3. We concluded *Goode* set forth the proper standard for analyzing the State's request. *Id.*, ¶ 9. We observed that the purpose of both § 30.19 and shoreland zoning ordinances was "to protect navigable waters and the public rights therein from . . . degradation and deterioration." *Id.*, ¶ 9 n.3. We also noted there was a "substantial public interest" underlying both shoreland zoning ordinances and "statutes designed to prevent unpermitted alteration of navigable public waters[.]" *Id.*

■■
¶ 23. By analogy, we conclude it is also appropriate to apply the *Goode* methodology in this case. The circuit court concluded deBarros and CGIP violated Wɪs. Sᴛᴀᴛ. § 281.36(2)(a) (2009–10). Similar to shoreland zoning ordinances, the purpose of Wɪs. Sᴛᴀᴛ. ch. 281 is to "protect, maintain and improve the quality and management of the waters of the state[.]" *See* Wɪs. Sᴛᴀᴛ. § 281.11. To this end, both shoreland zoning ordinances and § 281.36(2)(a) require citizens to obtain permission

---

State needed to prove it had no adequate remedy at law and would suffer irreparable harm without the injunction. We reject this argument. Nothing in *Goode* requires a party seeking an injunction to prove either irreparable harm or the absence of an adequate remedy at law. Indeed, *Goode* specifically held that a county did not need to show irreparable harm to obtain an injunction enforcing its shoreland zoning ordinance. *Id.* at 682–83.

before conducting otherwise impermissible activities that may harm the state's waters. Additionally, as with shoreland protection, the public has a substantial interest in protecting the state's wetlands. *See Just v. Marinette Cnty.*, 56 Wis. 2d 7, 17, 201 N.W.2d 761 (1972) (explaining that wetlands "serve a vital role in nature, are part of the balance of nature and are essential to the purity of the water in our lakes and streams"). It therefore makes sense to apply *Goode*'s methodology in this case.

¶ 24. We thus turn to the question of whether the circuit court properly determined there were compelling equitable reasons not to grant the State an injunction under *Goode*. We conclude, for several reasons, that the court erroneously exercised its discretion.

¶ 25. First, we observe that, once a violation is proven, *Goode* sets forth a rebuttable presumption that the court should grant an injunction. To overcome this presumption, the defendant must convince the court that there are compelling equitable reasons to deny injunctive relief. *See Goode*, 219 Wis. 2d at 684. While the circuit court acknowledged this standard in its decision on the State's motion for reconsideration, it made several statements indicating it actually placed the burden on the State to establish specific instances of environmental harm caused by deBarros' road. For instance, the court stated, "The injunction should only be granted if it is required or necessary to minimize the environmental damage or to remove the environmental impact." The court also criticized the State for failing to present evidence of "any particular type of harm" or evidence "other than generally that the continuation of this road creates environmental damage." It later reiterated the State needed to prove "something other than just general[]" harm to obtain an injunction.

114

¶ 26. By shifting the burden of proof to the State, the circuit court applied an incorrect legal standard. *Goode* does not require the State to prove particular instances of environmental harm to obtain an injunction. Instead, *Goode* dictates that, once a violation is proven, it is the defendant who must establish compelling equitable reasons not to grant injunctive relief. This court rejected a similar attempt to make the State prove specific instances of environmental harm in *Poehnelt*, unpublished slip op. ¶¶ 11–12. There, the circuit court "repeatedly stressed it was 'up to the [S]tate to prove that [harm was done].' " *Id.*, ¶ 11 (brackets in *Poehnelt*). We concluded the court erred by placing the burden on the State because *Goode* sets forth a "presumption [that] favors granting an injunction to restore the environment[,]" which can only be overcome if the defendant presents compelling equitable reasons to deny injunctive relief. *Poehnelt*, unpublished slip op. ¶¶ 11–12. We therefore held the State did not need "to demonstrate the necessity of the injunction" by proving environmental harm. *Id.*, ¶ 11. As in *Poehnelt*, the circuit court in this case erroneously exercised its discretion by requiring the State to prove environmental harm.

¶ 27. Moreover, although the circuit court ultimately concluded there were compelling equitable reasons to deny the injunction, and although it generally considered proper factors in reaching its decision, many of its conclusions were not supported by the evidence. As explained below, the court repeatedly substituted its own lay opinions for undisputed expert testimony. It also disregarded the ALJ's findings and this court's prior decision. In addition, the court ascribed undue weight to several factors and too little weight to others. For these additional reasons, we also conclude the court erroneously exercised its discretion.

¶ 28. The court began its decision on the State's motion for reconsideration by observing that deBarros "clearly" did not need the disputed road to access her property. deBarros and CGIP argue this shows the court properly exercised its discretion by considering the "use of the property." We agree that deBarros' access to her property was a proper factor for the court to consider. However, the court ascribed little significance to this factor and did not explain how it contributed to the court's decision. As the State puts it, the court should have "take[n] the next logical step and f[ound] that the previous existence of access to deBarros'[] property . . . did not constitute a 'compelling reason' " not to grant an injunction.

¶ 29. The court next addressed the interest of Wisconsin's citizens in preserving wetlands, which it described as "substantial." However, the court indicated it did not believe the area in question was actually a wetland, in light of Connor's testimony that the area is not covered by standing water. The court's conclusion that the area is not a wetland directly contradicts its earlier summary judgment ruling, in which the court found deBarros and CGIP liable for violating WIS. STAT. § 281.36(2)(a) (2009–10). That statute prohibits any person from discharging fill material into a nonfederal *wetland* without a water quality certification. By concluding that deBarros and CGIP violated § 281.36(2)(a) (2009–10), the court implicitly found that the area in question was a wetland.

¶ 30. The court next concluded the wetland has relatively little environmental value because it is "approximately a mile" from Birch Lake and therefore does not perform the important functions carried out by wetlands close to navigable water. The court also noted the wetland has little esthetic or recreational value because it is surrounded by privately owned land and is

not accessible to the general public.[4] In addition, the court concluded it was "clear" that removing the road would cause more harm to the environment than leaving it in place.

¶ 31. These findings are completely unsupported by the evidence. Rosenberger testified the wetland is only one-quarter mile from Birch Lake and is "especially important" because of its close proximity to navigable water. He also testified that a wetland's recreational value extends beyond its borders to the state's navigable waterways. He further testified fill can be safely removed from a wetland if a proper restoration plan is followed. He described the DNR's proposed restoration plan in detail and testified it is a proper plan for removal of the road. Rosenberger's expert testimony on these points was uncontroverted. A circuit court is not required to adopt uncontroverted expert testimony if it is inherently improbable or if "something in the case . . . discredits the testimony or renders it against reasonable probabilities." *Ashraf v. Ashraf*, 134 Wis. 2d 336, 345, 397 N.W.2d 128 (Ct. App. 1986). Here, no other evidence discredited Rosenberger's testimony, and his testimony was not inherently improbable. The court therefore erred by disregarding Rosenberger's testimony and substituting its own lay opinions.[5]

---

[4] The court apparently ignored the esthetic value the wetland has to deBarros' neighbors, including those who petitioned for an administrative hearing to challenge the water quality certification.

[5] deBarros and CGIP argue the circuit court could properly disregard Rosenberger's testimony because Rosenberger had never visited the site. We disagree. Rosenberger's testimony was based on his review of photographs and other documentation compiled by the DNR employee who previously handled the case, as well as Rosenberger's significant experience enforcing wetland

¶ 32. The court also erred by concluding deBarros' and CGIP's violation was not particularly serious because the road's surface area comprises only one-tenth of an acre out of a ten-acre wetland. This finding disregards Rosenberger's uncontroverted testimony that the harm caused by placing fill in a wetland extends beyond the footprint of the fill. In addition, the court's conclusion flies in the face of the ALJ's finding that the road's adverse impacts "extend substantially beyond the approximate 0.092–acre footprint of the roadbed." As noted above, this court affirmed the ALJ's decision on appeal, concluding the ALJ's findings were reasonable and supported by substantial evidence. *See deBarros*, unpublished slip op. ¶ 16. Our decision was binding on the circuit court as the law of the case. *See Univest Corp. v. General Split Corp.*, 148 Wis. 2d 29, 38, 435 N.W.2d 234 (1989) ("[A] decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal."). Consequently, the court was not free to disregard the ALJ's findings.

¶ 33. The court further erred by ascribing undue significance to the fact that deBarros constructed the road "consistent with the permit" the DNR issued, which required her to take certain steps to minimize environmental harm. The court reasoned that, because the DNR "addressed and considered" adverse impacts when it issued the water quality certification, the road's impact on the environment must not be significant. The court stated the DNR must have concluded the environmental risks were "worth it" when it issued the certification. In addition, the court suggested deBarros

protection laws. deBarros and CGIP do not explain why Rosenberger's failure to visit the site renders his testimony inherently improbable.

acted in good faith because she obtained a certification before constructing the road.

¶ 34. These conclusions completely discount the fact that the DNR only issued deBarros a certification based on her false statement that she needed the new road to access her property. The DNR is *required* to authorize a wetland fill project under WIS. ADMIN. CODE § NR 103.08(4)(a)1. and 2. if no practicable alternative exists and the project minimizes adverse impacts to the wetland, and Rosenberger specifically testified the DNR would never have granted deBarros a certification if it knew she had permanent access to her property using the existing roads. Thus, that the DNR granted deBarros a certification does not indicate it viewed the environmental impacts of her project as minimal or acceptable. Moreover, this court's previous decision specifically concluded deBarros lacked clean hands because she obtained the certification based on a falsehood. *See deBarros,* unpublished slip op. ¶ 16 n.3. Again, our decision that deBarros lacked clean hands was binding on the circuit court as the law of the case. The court therefore erred by concluding deBarros acted in good faith by obtaining a certification before beginning construction.

¶ 35. The court also erred by concluding the cost to remove the road would be more than $7,200. There is no evidence in the record to support that conclusion. Neither party introduced admissible evidence of the cost to remove the road. While counsel for deBarros and CGIP opined it would cost $7,200 both to remove the road and to build a new road around the wetland, counsel's statement to that effect was not evidence. *See Merco Distrib. Corp. v. O & R Engines, Inc.,* 71 Wis. 2d 792, 795–96, 239 N.W.2d 97 (1976) ("Arguments or statements made by counsel during argument are not to be considered or given weight as evidence."). Moreover, counsel's state-

ment certainly did not provide a basis for the court to conclude that removal of the road alone would cost *more* than $7,200.

¶ 36. In addition, the court ascribed undue weight to the DNR's role in contributing to the violation. Although it is undisputed that the DNR used the wrong procedure to process deBarros' application, there is no support for the court's conclusion that, had the proper procedure been followed, "these issues would have been resolved long before that road was installed." The only impact of the DNR's failure to follow the proper procedure was that the public was provided with an additional thirty days to request an administrative hearing. After deBarros received the DNR's final decision, she proceeded with construction of the road, even though she knew the public had an additional thirty days to challenge the certification. There is no evidence in the record that, had the DNR followed the proper procedure, deBarros would have waited to begin construction until the thirty-day period for requesting administrative review had elapsed.

¶ 37. The record also fails to support the court's conclusion that the DNR did not adequately investigate deBarros' access to her property before granting her a water quality certification. deBarros' application stated, "I hereby certify that the information contained herein is true and accurate. . . . Any inaccurate information submitted may result in permit revocation, the imposition of a forfeiture(s) and requirement of restoration." The circuit court did not explain, and we do not understand, why the DNR was not entitled to rely on information that deBarros certified to be correct. Moreover, the DNR *did* ask deBarros to provide additional information about the access to her property before it granted her the certification. In response to the DNR's

request, deBarros provided documents indicating her right to use the existing roads had been revoked. The ALJ specifically found that those documents were false and that deBarros or her representatives "knew or should have known" of their falsity. Thus, contrary to the circuit court's conclusion, the record shows that the DNR attempted to investigate deBarros' claims, but it was stymied by false representations.

¶ 38. For all the foregoing reasons, we conclude the circuit court erroneously exercised its discretion when it concluded there were compelling equitable reasons to deny the injunction. We therefore reverse that portion of the court's judgment denying the State's request for injunctive relief.

¶ 39. The State contends we should also remand this case to the circuit court with directions to grant the injunction. In support of its argument, the State cites *Sunnyside Feed Co. v. City of Portage*, 222 Wis. 2d 461, 588 N.W.2d 278 (Ct. App. 1998). There, we concluded the circuit court erroneously exercised its discretion by failing to grant an injunction because it did not adequately consider several relevant factors. *Id.* at 473. We then stated, "While we would ordinarily remand for the trial court's further consideration, we conclude that, on the evidence presented, the only reasonable conclusion would be to issue an injunction." *Id.* at 473–74. We therefore remanded with directions to grant the injunction.

¶ 40. A similar result is appropriate here. To overcome the presumption in favor of granting the injunction, deBarros and CGIP had to establish compelling equitable reasons to deny injunctive relief. They failed to satisfy their burden. The only evidence they presented in

121

support of denying the injunction was Connor's lay testimony that: (1) the area in question is just "a bunch of weeds" and is not actually a wetland; and (2) any misrepresentations deBarros made to the DNR were unintentional. Connor's testimony on the first point was directly contradicted by the circuit court's prior summary judgment decision. Connor's testimony on the second point was directly contradicted by the ALJ's decision, which concluded deBarros knew or should have known her application contained false representations, and by this court's prior ruling that deBarros' lacked clean hands. Thus, Connor's testimony did not support a finding that this is one of the "rare" cases in which there are compelling equitable reasons to deny injunctive relief. *See Goode*, 219 Wis. 2d at 684.

¶ 41. Moreover, the State presented undisputed expert testimony that: (1) wetlands are environmentally valuable; (2) placing fill in a wetland is harmful to the environment; (3) removing fill from a wetland presents little or no risk of environmental harm when done properly; (4) removal of deBarros' road is the only way to restore the wetland; and (5) the DNR's plan for removing the road is a proper restoration plan. On this record, the only reasonable conclusion would be to grant the injunction. *See Sunnyside Feed Co.*, 222 Wis. 2d at 473–74. We therefore remand to the circuit court with directions that it issue an injunction requiring deBarros and CGIP to remove the road and restore the wetland, pursuant to the DNR's restoration plan.

*By the Court.*—Judgment reversed in part and cause remanded with directions.