SEIDL, J.
*646 ¶1 Carlin Club Properties, LLC ("Carlin Club") appeals a summary judgment granted *647 in favor of Carlin Lake Association, Inc. ("the Association") and seven individual owners of riparian property on Carlin Lake ("the Landowners").[1] The judgment granted the Landowners' request for a judgment declaring that Carlin Club's proposed use of its property-to pump water from a well and then transport that water off-site for bottling and commercial sale-would be in violation of Vilas County's general and shoreland zoning ordinances. Further, the judgment permanently enjoined Carlin Club from conducting any activities related to the pumping and transporting of its well water for off-site commercial sale.
¶2 On appeal, Carlin Club argues the circuit court erred in granting the Landowners summary judgment for multiple reasons. Specifically, Carlin Club contends: (1) the Landowners lacked standing under WIS. STAT. § 59.69(11) (2017-18)[2] to enforce the applicable county zoning ordinance because they did not demonstrate they suffered any special damages; (2) the Association also lacked standing under § 59.69(11) because it did not own any real property within the district affected by the ordinance;[3] (3) the Landowners' action was not ripe for adjudication because *648 Carlin Club had not yet violated the ordinance; (4) the court erroneously exercised its discretion by determining that equitable factors did not preclude the issuance of an injunction; and (5) the county zoning ordinance at issue is invalid because it is preempted by the Department of Natural Resources' (DNR) authority to regulate groundwater withdrawal. *233 ¶3 We reject Carlin Club's arguments, with one exception-we agree with Carlin Club that the Association did not have authority to maintain an action to enforce the county zoning ordinance at issue. In all, we conclude: (1) the plain language of WIS. STAT. § 59.69(11) grants the individual Landowners authority to maintain this enforcement action, as they own real property in the district affected by the ordinance; (2) conversely, the Association cannot maintain this enforcement action under § 59.69(11) because it does not own any real property in the district affected by the ordinance; (3) the Landowners' claims were ripe for adjudication because Carlin Club's affirmative actions demonstrated a sufficient probability that it was going to violate the ordinance; (4) although the circuit court improperly placed the burden on Carlin Club to show that equitable factors precluded the issuance of a prospective injunction, on this record the only reasonable conclusion is that the court's decision to issue an injunction was equitable; and (5) the ordinance was not preempted because it did not conflict with the DNR's authority to regulate groundwater withdrawal. Accordingly, we affirm in part, reverse in part, and remand with directions to dismiss the Association as a party to this action. *649 BACKGROUND
¶4 The following facts are undisputed. Carlin Club owns two adjacent parcels of riparian property on Carlin Lake, which is located in Vilas County. Carlin Club operated a lodge, bar and restaurant on one of these properties ("the Lodge property") until early 2015, at which time the bar and restaurant ceased operations. The second property ("the Sorenson property") is a residential property. Both properties have water wells on their premises.
¶5 The Lodge and Sorenson properties both fall within Vilas County's single-family residential zoning district ("the R-1 district"). The properties are also within 1000 feet of Carlin Lake, a navigable waterway, making them subject to the Vilas County shoreland zoning ordinance. The Vilas County shoreland zoning ordinance incorporates all provisions of the Vilas County general zoning ordinance.
¶6 The R-1 district generally prohibits commercial uses of property, absent an applicable exception. One such exception is a legal, nonconforming use existing at the time the general zoning ordinance was adopted. Although the appellate record does not indicate when Carlin Club began operating the lodge, bar and restaurant on the Lodge property, it is undisputed that those operations "pre-dated the adoption" of the general zoning ordinance and therefore constituted legal, nonconforming commercial uses of property in the R-1 district.
¶7 All of the Landowners also own real property within the R-1 district. The Association is an organization comprised exclusively of members who own property in the R-1 district. However, the Association itself does not own any real property in the R-1 district.
*650 ¶8 In April 2015, licensed well driller Marc Debrock performed a "pump test" on the Lodge property well. He determined that the well was capable of pumping fifty gallons of water per minute. One month later, it was "brought to the attention" of Vilas County zoning administrator Dawn Schmidt that Carlin Club was planning to pump water from the Lodge property well "for the purpose of being transported, bottled and sold as a commercial product at another site." Schmidt notified Carlin Club in a memorandum that this activity was not a permissible use of its property because it was "in violation" of the R-1 district's *234 prohibition against commercial activities. Further, because Carlin Club's planned use was "separate and distinct" from the legal, nonconforming uses of the Lodge property as a resort, bar and restaurant, she informed Carlin Club that its planned activity would be an "illegal change in use."
¶9 In July 2016, upon Schmidt's request, Vilas County corporation counsel Martha Milanowski issued her own memorandum addressing whether Carlin Club's intended use of its property would violate the county zoning ordinance. Milanowski concluded it would not, as pumping and transporting water for commercial sale would not be "inconsistent with the property's present grandfathered use." Milanowski based her conclusion on her "understanding [that] the proposed plan does not include any new building construction and the water will be pumped into a truck that will then transport the water off[-]site." She reasoned that because the Carlin Club's legal, nonconforming uses of the Lodge property "undoubtedly [involved] trucks driving to and from the property, bringing in various commodities for the resort and also *651 providing utility services[,]" "[t]he plan as proposed does not appear to introduce any new nonconforming use on the property."
¶10 In November 2016, the Landowners filed their complaint in the present action. The Landowners also filed a motion for a temporary restraining order and temporary injunction ("the TRO motion"), arguing Carlin Club's "proposed use of [the Lodge property] to pump and transport well water to a facility off[-]site for bottling and commercial sale constitutes a new and different use of the [Lodge property], in violation of the Vilas County General Zoning Ordinance." Further, the Landowners stated that Milanowski's "attempt to support the new activity as a variation of delivery trucks and septic pumping equipment traveling to and from the property fails to acknowledge the new and different commercial activity proposed for the property." Accordingly, the Landowners requested "an order enjoining the defendant from pumping and removing well water from [the Lodge property] for transport and bottling at a commercial facility."
¶11 While the TRO motion was pending, Carlin Club began constructing a "driveway for the trucks hauling water" as well as a "shed ... to house the valve and filling equipment" on the Sorenson property. As part of this project, Debrock disconnected the Carlin Club lodge facility's waterlines from the Lodge property well and connected them to the Sorenson property well. Debrock stated in his deposition that this reconfiguration was necessary because if the Lodge property well were to be used when "filling a tanker, you won't have any water to feed the Carlin Club" lodge.
¶12 Vilas County zoning officials ordered Carlin Club to cease its construction activities after it was discovered that Carlin Club had not secured an appropriate *652 shoreland alteration permit. Carlin Club subsequently applied for this permit, but Vilas County deputy zoning administrator James Janet denied this application. Janet based his denial on the fact that the construction was taking place on the Sorenson property, which-in contrast to the Lodge property-did not have authorization for any legal, nonconforming commercial uses.
¶13 On March 17, 2017, the circuit court held an evidentiary hearing on the TRO motion and ultimately granted the Landowners' request for a temporary injunction. The court's order provided:
Until further order of this Court, [Carlin Club] is enjoined from using, or allowing the use of its property on Carlin Lake in Vilas County, Wisconsin, for the purpose of pumping well water to be transported *235 off of [Carlin Club's] property for bottling and/or commercial sale. [Carlin Club] is further enjoined from erecting any new structure, driveway or other facility on its Carlin Lake property for use in the aforementioned pumping and transport of well water.
¶14 In May 2017, Debrock returned to the Lodge property and installed a new pump on the Lodge property well. Debrock testified this new pump allowed the Lodge property well to pump water at its maximum capacity-i.e., fifty gallons per minute. Debrock also installed a globe valve at the top of the well. Debrock then tested the well by "temporarily" pumping water for approximately one hour and testified that, assuming Carlin Club had "an electrician ... hook up a switch[,]" that at that point the Lodge property well was ready to pump water directly into tanker trucks.
¶15 On June 1, 2017, Trygve Solberg, a forty-percent owner of Carlin Club, met with two of the *653 Landowners to discuss Carlin Club's plans for the Lodge property well. Solberg informed the Landowners that Carlin Club intended to create "a turnaround at the [Lodge] property for tanker trucks, and that each truck would hold 6000 gallons of water, which would take two hours to fill." Carlin Club then intended to transport the water to a water bottling facility in Marinesco, Michigan, that was owned by Superior Springs, LLC ("Superior Springs").[4] Solberg stated that the Marinesco facility "would use 20,000 gallons of water per day, bottling 6000 gallons per shift and allotting for 2000 gallons of spillage."
¶16 On July 13, 2017, the Landowners filed a motion for imposition of a remedial sanction against Carlin Club. In support, the Landowners argued the work Debrock performed for Carlin Club in May 2017 violated "both the spirit and letter of the injunction order entered in March 2017." Following an evidentiary hearing, the circuit court determined that Carlin Club had violated its injunction order and awarded the Landowners $ 4000 in costs.
¶17 In August 2017, the parties filed cross-motions for summary judgment. Following a hearing, the circuit court granted summary judgment to the Landowners. The court found there was no genuine issue of material fact and declared that Carlin Club intended to use its property for a commercial activity not authorized within the R-1 district. However, the court granted Carlin Club's request to allow further briefing as to whether it would be equitable for the court to issue a permanent injunction.
*654 ¶18 At a subsequent hearing, the circuit court determined that, based on its previous finding that Carlin Club's proposed use of its property would violate a zoning ordinance, there was a "rebuttable presumption that the Court must grant the injunction." As such, the court stated it would grant the Landowners a permanent injunction unless Carlin Club could show "compelling equitable reasons not to do so." After taking testimony from both parties, the court ultimately concluded "in all, the [Landowners'] interest outweighs any potential loss to [Carlin Club] and, therefore, equitable relief will not be granted." Accordingly, the court entered a final judgment granting the Landowners a permanent injunction. Carlin Club now appeals.[5] Additional relevant facts are included below.
*236 DISCUSSION
¶19 We review a grant of summary judgment independently, applying the same methodology as the circuit court. Tews v. NHI, LLC , 2010 WI 137, ¶40, 330 Wis. 2d 389, 793 N.W.2d 860. Summary judgment is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. See WIS. STAT. § 802.08(2). Generally, when both parties file cross-motions for summary judgment, it is the equivalent of a stipulation of facts permitting the case to be decided solely on the legal *655 issues presented. See BMO Harris Bank, N.A. v. European Motor Works , 2016 WI App 91, ¶15, 372 Wis. 2d 656, 889 N.W.2d 165. Here, the parties do not argue any exceptions to this general rule, or that there are material facts in dispute, and so we proceed to decide the contested issues as matters of law.
I. Right to enforce a county zoning ordinance
¶20 We begin by addressing Carlin Club's contention that neither the Association nor the Landowners had authority under WIS. STAT. § 59.69(11) to maintain their enforcement action. As indicated above, we frame this issue as a matter of statutory interpretation, rather than standing. We do so based on our supreme court's recent decision in Moustakis v. DOJ , 2016 WI 42, 368 Wis. 2d 677, 880 N.W.2d 142. In Moustakis , our supreme court addressed a similar issue-whether a statute granted authority to a specific party such that the party could "maintain an action" under the statute. Id. , ¶3. In its decision, the court noted that although "the parties and the circuit court and court of appeals framed the issue presented as a question of standing ... it is easier to frame the issue as a matter of statutory interpretation rather than as a matter of standing." Id. , ¶3 n.2. Further, the court noted that "[s]tanding and statutory interpretation are distinct and should not be conflated." Id. Accordingly, we interpret and apply the language of § 59.69(11) to determine whether the Association and the Landowners had authority to maintain their enforcement action against Carlin Club.
¶21 Statutory interpretation presents a question of law that we review independently.
*656 Wisconsin Prof'l Police Ass'n v. WERC , 2013 WI App 145, ¶11, 352 Wis. 2d 218, 841 N.W.2d 839. When interpreting a statute, our objective is to determine what the statute means so that it may be given its full, proper, and intended effect. State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. Our analysis begins with the plain language of the statute, and if a plain meaning is evident from that language, we ordinarily stop the inquiry. Id. , ¶45. In addition, statutory language must be interpreted "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id. , ¶46.
¶22 WISCONSIN STAT. § 59.69(11) "is an enforcement mechanism available when a property owner does not comply with [a county] zoning ordinance." Forest Cty. v. Goode , 219 Wis. 2d 654, 667-68, 579 N.W.2d 715 (1998). The statute provides, in relevant part, that "[c]ompliance with such ordinances may ... be enforced by *237 injunctional order at the suit of the county or an owner of real estate within the district affected by the regulation. " Sec. 59.69(11) (emphasis added). Based upon a plain-meaning interpretation of this provision, we conclude that the Landowners had authority to enforce the county zoning ordinance at issue, but that the Association did not.
A. The Landowners
¶23 It is undisputed that the Landowners are "owner[s] of real estate within the district affected by the regulation" they are attempting to enforce, as is required for a party to bring an action under *657 WIS. STAT. § 59.69(11). Nevertheless, Carlin Club argues that property ownership within the district affected by the regulation is a "necessary, but not sufficient, prerequisite" for proceeding under § 59.69(11).
¶24 In support, Carlin Club argues that WIS. STAT. § 59.69(11) is ambiguous, as it can be interpreted in "two competing ways." Namely, Carlin Club argues that § 59.69(11) can be read to allow a property owner to bring suit either if: (1) they own real property located within the district affected by the regulation; or (2) they are "an owner of property in the district, who is affected by the regulation, i.e., a [county] property owner who can show special damage due to a violation of the regulation." Further, Carlin Club argues the latter interpretation is correct because it is "consistent with over 100 years of Wisconsin law requiring owners of property to be specially damaged in order to sue to enforce an ordinance violation." For the following reasons, we reject Carlin Club's reading of § 59.69(11).
¶25 First, WIS. STAT. § 59.69(11) is not ambiguous because it is not capable of being read in two or more ways by reasonable, well-informed persons. See Kalal , 271 Wis. 2d 633, ¶47, 681 N.W.2d 110. A plain reading of the statute shows that the phrase "affected by the regulation" qualifies the location of the real estate owned, not any condition relative to the real estate owner. Indeed, the statute precisely defines the physical area in which a property owner's real estate must be located to allow a property owner to enforce a county zoning ordinance under § 59.69(11) : "within the district affected by the regulation." There is nothing ambiguous about this straightforward definition.
¶26 Second, even assuming, for the sake of argument, that WIS. STAT. § 59.69(11) is ambiguous, accepting Carlin Club's proposed interpretation would *658 produce an absurd and unreasonable result. Essentially, Carlin Club's proposed interpretation of the statute would have us rewrite § 59.69(11) to read: "Compliance with such ordinance may also be enforced by an injunction order at the suit of the county or an owner of real estate affected by the regulation within the district." This construction would make no rational sense. For instance, in this case, Carlin Club's construction of the statute would have courts inquire as to whether R-1 zoning district regulations affect property owners within the R-1 district. This circular inquiry would be absurd.
¶27 Finally, the cases that Carlin Club relies upon to support its argument are distinguishable. Specifically, Carlin Club points to Holzbauer v. Ritter , 184 Wis. 35, 198 N.W. 852 (1924), and its progeny to support its argument that if a property owner need not show they were "specially damaged" before bringing suit under WIS. STAT. § 59.69(11), "over 100 years of Wisconsin law regarding private enforcement of ordinance violations" would be abrogated. [6]
*238 ¶28 However, Holzbauer and its progeny address violations of city zoning ordinances, as opposed to county zoning ordinances. See e.g. , Holzbauer , 184 Wis. at 36, 198 N.W. 852 ; see also Oeland v. Woldenberg , 185 Wis. 510, 512, 201 N.W. 807 (1925). City zoning ordinances are governed by an entirely different statutory scheme *659 than county zoning ordinances. Compare WIS. STAT. ch. 59 with WIS. STAT. ch. 62. To that end, Carlin Club correctly notes that WIS. STAT. § 62.23(7)(f)2. provides that a property owner must be "specially damaged" to bring suit to enforce a city zoning ordinance. Even so, the lack of similar language in WIS. STAT. § 59.69(11) undercuts Carlin Club's argument that the Landowners must show they were specially damaged by a county zoning ordinance.
¶29 This conclusion follows because we presume that the legislature chooses its terms carefully and precisely to express its intended meaning. Ball v. District No. 4, Area Bd. of Vocational, Tech. & Adult Educ. , 117 Wis. 2d 529, 539, 345 N.W.2d 389 (1984). Based on this presumption, we view the presence of a special damages requirement in WIS. STAT. § 62.23(7)(f)2., combined with the absence of such a requirement in WIS. STAT. § 59.69(11), as a deliberate choice by the legislature. We decline to disturb that choice by grafting the language found in § 62.23(7)(f)2. into § 59.69(11).
¶30 Here, each of the seven individual Landowners undisputedly owns real estate within the district affected by the R-1 zoning district regulations that they were attempting to enforce, as required by the statute. The circuit court therefore properly determined that WIS. STAT. § 59.69(11) granted the Landowners authority to bring suit to enforce compliance with the county zoning ordinance.
B. The Association
¶31 Carlin Club next argues that the Association may not maintain an enforcement action under *660 WIS. STAT. § 59.69(11) because it is not "an owner of real estate within the district affected by the regulation" sought to be enforced. In response, the Association does not contend § 59.69(11) grants it authority to maintain an enforcement action. Instead, it points to our supreme court's statement "that an organization devoted to the protection and preservation of the environment has standing to sue in its own name if it alleges facts sufficient to show that a member of the organization would have had standing to bring the action in his own name."[7] Wisconsin's Envtl. Decade, Inc. v. PSC , 69 Wis. 2d 1, 20, 230 N.W.2d 243 (1975).
¶32 For the reasons set forth above, the Association's reliance on Wisconsin Environmental Decade is misplaced. Resolution of whether the Association has authority to maintain an enforcement action under WIS. STAT. § 59.69(11) is not based upon "the law of standing itself[,]" but rather on the text of the statute. See *239 Moustakis , 368 Wis. 2d 677, ¶3 n.2, 880 N.W.2d 142. It is undisputed that the Association does not fall within the statutory categories of individuals that may maintain an action to enforce a county ordinance. In particular, it has no property interest to protect. Furthermore, the ordinance sought to be enforced does not directly relate to the protection of the environment but, rather, the alleged ordinance violation pertains to someone engaging in unlawful commercial activity. Accordingly, we conclude the circuit court erred by finding that the Association had "standing" to remain in the action.
¶33 Despite our conclusion that the circuit court erred by not dismissing the Association, we agree *661 with the court that, "as a practical matter," the ability of the Association to remain as a party in this action has no effect on the outcome of the underlying dispute. On appeal, the Landowners argue that all plaintiff-respondents "are represented by the same legal counsel, and the same claims, evidence and arguments would have been presented to the circuit court had the Association not been named as a party." Carlin Club fails to respond to this argument. We therefore deem it conceded that although the court improperly allowed the Association to remain as a party in this case, the court's error had no practical effect on the outcome of the case. See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp. , 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979). Still, we reverse the court's decision to allow the Association to remain a party to the case, as it has no authority to bring an enforcement action under WIS. STAT. § 59.69(11).
II. Ripeness for adjudication
¶34 Carlin Club next argues that the circuit court erred in granting the Landowners summary judgment because their "request for declaratory and injunctive relief" was not ripe for adjudication. Ripeness is a threshold jurisdictional question that we review de novo. Olson v. Town of Cottage Grove , 2008 WI 51, ¶32, 309 Wis. 2d 365, 749 N.W.2d 211.
¶35 The doctrine of ripeness requires that, for an action to be justiciable, the facts of a case must be sufficiently developed to allow a conclusive adjudication. Id. , ¶43. The basic rationale of this doctrine is to prevent courts from entangling themselves in abstract *662 disagreements. Lister v. Board of Regents of Univ. of Wis. Sys. , 72 Wis. 2d 282, 309, 240 N.W.2d 610 (1976). Thus, courts generally view cases where resolution of the disputed issues rest on "hypothetical or future facts" as not ripe for adjudication in order to avoid rendering advisory opinions. Tammi v. Porsche Cars N. Am., Inc. , 2009 WI 83, ¶3, 320 Wis. 2d 45, 768 N.W.2d 783. "For declaratory judgment and injunctive relief, however, the standard for ripeness is lower: harm may be anticipatory, if imminence and practical certainty of act or event exist." Wisconsin Ass'n of State Prosecutors v. WERC , 2018 WI 17, ¶17 n.13, 380 Wis. 2d 1, 907 N.W.2d 425.
¶36 This lower ripeness standard for declaratory judgments reflects that
the underlying philosophy of the Uniform Declaratory Judgments Act [see WIS. STAT. § 806.04 ] is to enable controversies of a justiciable nature to be brought before the courts for settlement and determination prior to the time that a wrong has been threatened or committed. Th[is] purpose is facilitated by authorizing a court to take jurisdiction at a point earlier in time than it would do under ordinary remedial rules and procedures. As such, the Act provides a remedy which is primarily anticipatory or preventative in nature.
*240 Lister , 72 Wis. 2d at 307, 240 N.W.2d 610 (footnote omitted). Similarly, the lower ripeness standard for injunctive relief reflects the forward-looking nature of an injunction: "The injunction is a preventive order, looking to the future conduct of the parties. To obtain an injunction, a plaintiff must show a sufficient probability that future conduct of the defendant will violate a right of and will injure the plaintiff." Columbia Cty. v. Bylewski , 94 Wis. 2d 153, 163, 288 N.W.2d 129 (1980)
*663 (quoting Pure Milk Prods. Coop. v. National Farmers Org. , 90 Wis. 2d 781, 800, 280 N.W.2d 691 (1979) ). Accordingly, injunctive relief is particularly well-suited to potential zoning ordinance violations, as "[p]revention rather than punishment is the keynote of most zoning administration." Goode , 219 Wis. 2d at 680, 579 N.W.2d 715.
¶37 Carlin Club relies on Goode for the proposition that injunctive relief is available under WIS. STAT. § 59.69(11) only after a violation of a county zoning ordinance has occurred. In support, it points to our decision in Town of Delafield v. Winkelman , 2003 WI App 92, ¶11, 264 Wis. 2d 264, 271, 663 N.W.2d 324, aff'd , 2004 WI 17, 269 Wis. 2d 109, 675 N.W.2d 470, wherein we stated that the Goode court "held that when a circuit court is asked to grant injunctive relief for a proven zoning ordinance violation, § 59.69(11) does not eliminate the circuit court's equitable power to deny injunctive relief in a particular case."
¶38 Carlin Club's reliance on Goode is misplaced. To be sure, the Goode court held-as we acknowledged in Town of Delafield -that a circuit court has the equitable power to deny injunctive relief for a proven zoning ordinance violation. See Goode , 219 Wis. 2d at 657, 579 N.W.2d 715. Nowhere in its decision, however, did the Goode court hold that a plaintiff could not seek injunctive relief until after the violation had occurred. To the contrary, the court stated that "[i]f and when the county or a district property owner chooses to pursue an enforcement action remains at their discretion." Id. at 668, 579 N.W.2d 715. In addition, the Goode court cited with approval its prior decision in Bylewski , which lends further support to our conclusion that a party may pursue an enforcement action under WIS. STAT. § 59.69(11) before a zoning violation has actually occurred. See Goode , 219 Wis. 2d at 670-73, 684, 579 N.W.2d 715.
*664 ¶39 In Bylewski , our supreme court addressed the proof that a party must provide to be entitled to statutory injunctive relief.[8] See Bylewski , 94 Wis. 2d at 163, 288 N.W.2d 129. The court began by setting forth the traditional showings a party needs to make before obtaining common law injunctive relief: (1) a sufficient probability that future conduct will violate a right of and will injure the plaintiff; (2) that the injury will be irreparable; and (3) that no adequate remedy exists at law for the injury. Id. The court then held that when a statute authorizes a party "to seek an injunction in order to enforce compliance with a county zoning ordinance, but says nothing about the injury caused," a plaintiff does not have to make the traditional showing that they will suffer an irreparable injury absent the issuance of an injunction. Id. at 163-64, 288 N.W.2d 129 ; see also Goode 219 Wis. 2d at 682-83, 579 N.W.2d 715.
¶40 Notably, however, Bylewski did not distinguish between the first showing a plaintiff must make to obtain either a *241 statutory or common-law injunction-namely, a "sufficient probability that future conduct of the defendant will violate a right of and will injure the plaintiff." Bylewski , 94 Wis. 2d at 163, 288 N.W.2d 129 Consequently, Bylewski supports our conclusion that a party pursuing an enforcement action under WIS. STAT. § 59.69(11) need not wait until a county zoning violation has actually occurred before seeking an injunction. Instead, the party must show a "sufficient probability" that a county zoning ordinance violation will occur. *665 ¶41 In this case, we conclude the Landowners satisfied the "sufficient probability" standard. As the circuit court aptly stated, "[t]his is a situation where you have sufficient activity and conduct undertaken by [Carlin Club] to show the probability that [violating an ordinance] is what they are going to do."
¶42 Our conclusion is based upon the extensive, undisputed findings made by the circuit court. Namely: (1) Carlin Club hired Debrock to perform a test on the Lodge property well to determine the well's output capacity; (2) Debrock subsequently installed a new well head and pump sufficient to meet the needs for a water bottling operation; (3) Carlin Club performed modifications on "driveways and buildings" on its properties to facilitate pumping operations; (4) underground piping was connected to the "pump house"; (5) Carlin Club had invested a "couple of million dollars" in the project; and (6) Carlin Club representatives had made public statements at "Town meetings" that their plan was to use the Lodge property to pump water for off-site bottling. In all, these findings provide ample support for our conclusion that the Landowners satisfied their burden to show a "sufficient probability" that Carlin Club was going to violate a county ordinance. Consequently, this case was ripe for adjudication.
III. Equitable considerations
¶43 Carlin Club next argues that even if this case was ripe for adjudication, the circuit court erroneously exercised its discretion by concluding that equitable considerations did not weigh against the *666 issuance of an injunction. A court properly exercises its discretion when it logically interprets the facts, applies the proper legal standard, and uses a demonstrated rational process to reach a conclusion a reasonable judge could reach. State v. CGIP Lake Partners, LLP , 2013 WI App 122, ¶19, 351 Wis. 2d 100, 839 N.W.2d 136. In addition, when considering a request for injunctive relief, a court erroneously exercises its discretion by: (1) failing to consider and make a record of the factors relevant to its determination; (2) considering clearly irrelevant or improper factors; or (3) clearly giving too much weight to one factor. Id.
¶44 As a threshold matter, we observe that there appears to be no Wisconsin case law addressing which party bears the burden of establishing that it is equitable for an injunction to issue when a party's right to relief under WIS. STAT. § 59.69(11) is based on an anticipated, as opposed to a proven, violation of a county zoning ordinance. Generally, "injunctive relief is addressed to the sound discretion of the trial court; competing interests must be reconciled and the plaintiff must satisfy the trial court that on balance equity favors issuing the injunction." Bylewski , 94 Wis. 2d at 163, 288 N.W.2d 129 (citation omitted; emphasis added). This burden reflects that "injunctions are not to be issued lightly but only to restrain an act that is clearly contrary to equity and good conscience." Bartell Broadcasters, Inc. v. Milwaukee Broad. Co. , 13 Wis. 2d 165, 171, 108 N.W.2d 129 (1961).
*242 ¶45 However, in Goode our supreme court held that once a violation of a county shoreland zoning ordinance has been established, a circuit court "should grant" an injunction unless a defendant convinces the court "there are compelling equitable reasons" not to *667 do so. Goode , 219 Wis. 2d at 684, 579 N.W.2d 715. The court's decision to shift the traditional burden of convincing the court as to whether an injunction should issue from the plaintiff to the defendant was based upon the "importance of the circuit court's consideration of the substantial public interest in enforcing its shoreland zoning ordinances." Id. Still, the court cautioned that the issuance of "injunction[s] compelling conformance with [an] ordinance ... even if the violation was extremely minor" could lead to "unjust results." Id. at 679, 579 N.W.2d 715.
¶46 We conclude that shifting the traditional burden of convincing a circuit court as to whether an injunction should issue from the plaintiff to the defendant is not appropriate when a party pursues an enforcement action under WIS. STAT. § 59.69(11) based upon an anticipated, as opposed to a proven, violation of a county zoning ordinance. Our conclusion balances the Goode court's concern that injunctions issued for "minor violations" may lead to "unjust results" with the Bartell court's statement that injunctions meant to "restrain" a future act should be issued only if the future act is "clearly contrary" to equity.
¶47 Here, it is undisputed that the circuit court placed the burden on Carlin Club to establish compelling equitable reasons to deny injunctive relief. In doing so, the court applied an improper legal standard because, as explained, the Landowners must bear the burden to show that it is equitable for an injunction to issue based upon an anticipated violation of a county zoning ordinance. Ordinarily, we would remand for the court's further consideration of the relevant equitable factors under the proper legal standard-i.e., by requiring the Landowners to convince the court that it is *668 equitable for an injunction to issue. See CGIP Lake Partners , 351 Wis. 2d 100, ¶39, 839 N.W.2d 136. However, in cases where "on the evidence presented, the only reasonable conclusion would be to issue an injunction[,]" we need not do so. Id. (citation omitted). This is such a case.
¶48 The following factors are relevant to a circuit court's determination of whether it is equitable to enjoin a violation of a county zoning ordinance: (1) the interest of the citizens of the jurisdiction that has established the zoning requirements in enforcing the requirements; (2) the extent of the zoning violation; (3) whether the parties to the action have acted in good faith; (4) whether the violator of the zoning requirements has available any other equitable defenses, such as laches, estoppel or unclean hands; (5) the degree of hardship compliance with the zoning requirements will create; and (6) what role, if any, the government played in contributing to the violation. See Goode, 219 Wis. 2d at 684, 579 N.W.2d 715. On this record, the only reasonable conclusion is that these factors support the court's decision to issue an injunction.
¶49 Regarding the first factor, we agree with the circuit court that "zoning ... does provide for the interest of the community. That's what the zoning regulations are designed to do." Stated differently, the R-1 zoning district's prohibition against commercial uses of properties located within 1000 feet of shorelines demonstrates that the citizens of the jurisdiction have determined there is a substantial interest in distancing commercial activity from the water and environment in the community.
*243 ¶50 As to the second factor, for reasons set forth above, we agree with the circuit court that, although Carlin Club's violation had not yet occurred, there was *669 a "practical certainty" that a violation would occur absent the injunction. Moreover, we agree with the court that if Carlin Club were not enjoined, the "extent [of the violation] could be substantial." To that end, the court's conclusion that in this case "[a]n ounce of prevention is worth a pound of cure" demonstrated a well-reasoned thought process supporting the issuance of an injunction.
¶51 Turning to the third factor, we again agree with the circuit court that there is no evidence that the Landowners failed to act in good faith. The fact that the Landowners filed their enforcement action prior to an actual violation occurring cannot-as Carlin Club suggests-be viewed as a bad faith action because WIS. STAT. § 59.69(11) permits them to do so. Further, the filing of this action before the violation occurred saved all parties time, money, and potential damages by litigating the legality of Carlin Club's proposed use of its property as soon as practical when the certainty of its plans became known.
¶52 On the other hand, there is evidence that supports a finding that Carlin Club failed to act in good faith by violating the circuit court's temporary injunction. In addition, Carlin Club failed to seek a variance for its proposed use of its property, even though Schmidt's memorandum concluded that such use would be illegal.
¶53 The fourth factor-the availability of any traditional equitable defenses of laches, estoppel or unclean hands-has no application in this case. Carlin Club does make a cursory argument that the Landowners "hailed Carlin Club into court with unclean hands" because they "filed this action prior to any violation[.]" This argument fails because the clean hands doctrine only applies where a party's bad acts *670 causes the harm from which the party seeks relief. See Security Pac. Nat'l Bank v. Ginkowski , 140 Wis. 2d 332, 339, 410 N.W.2d 589 (Ct. App. 1987). We have already discussed at length why the Landowners' actions did not constitute bad acts, and therefore they cannot be viewed as having caused the harm from which the Landowners sought relief.
¶54 Finally, the circuit court correctly found that the degree of hardship and the role of the government are not factors that weigh against the issuance of an injunction. On appeal, Carlin Club asserts that "[t]he circuit court's decision has already rendered useless the option of applying for a variance or conditional use permit." The record belies this assertion. The court explicitly incorporated language in its judgment stating "[t]his injunction does not preclude the defendant from seeking a conditional use permit or other lawful relief from Vilas County officials, in order to conduct the enjoined activities." In other words, contrary to Carlin Club's assertion, there has not been any usurpation of the political process.
¶55 In summary, we conclude the circuit court improperly placed the burden on Carlin Club to show that it would not be equitable to issue an injunction to restrain the acts Carlin Club planned to take in violation of the R-1 zoning district's prohibition against commercial uses of property. As the Landowners' enforcement action sought to restrain future violations of a county zoning ordinance, the burden of convincing the court that an injunction should issue should have been borne by the Landowners. Nevertheless, on this record the only reasonable conclusion would be to grant the injunction. Accordingly, we determine the court did not err by doing so.
*244 *671 IV. Preemption
¶56 Finally, Carlin Club argues that "zoning regulations cannot be used to eviscerate the DNR's constitutional and legislative mandate to regulate water use in the state." We agree with Carlin Club that the DNR has a general duty to manage, protect, and maintain waters of the state, as well as broad authority to regulate groundwater withdrawal.[9] See Lake Beulah Mgmt. Dist. v. DNR , 2011 WI 54, ¶¶37, 39, 335 Wis. 2d 47, 799 N.W.2d 73. Be that as it may, only local ordinances that "attempt to regulate the identical activity as the state and that are 'diametrically opposed' to the state's policy" are invalid. Willow Creek Ranch, L.L.C. v. Town of Shelby , 2000 WI 56, ¶22, 235 Wis. 2d 409, 611 N.W.2d 693 (citation omitted).
¶57 The basic purpose of shoreland zoning ordinances is "to protect navigable waters and the public rights therein from the degradation and deterioration which results from uncontrolled use and develop[ment] of shorelands." Just v. Marinette Cty. , 56 Wis. 2d 7, 10, 201 N.W.2d 761 (1972). Here, Carlin Club fails to develop an argument explaining how this purpose conflicts with-much less is "diametrically opposed" to-the policy underlying the DNR's authority to regulate groundwater withdrawal. We decline to address this undeveloped argument further. See State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).
*672 CONCLUSION
¶58 We determine the circuit court properly granted the Landowners summary judgment, except in one respect. We conclude: (1) WIS. STAT. § 59.69(11) granted the seven individual Landowners authority to maintain this enforcement action, as the statute does not require that a plaintiff demonstrate special damages to maintain an action; (2) the Landowners' claims were ripe for adjudication because Carlin Club's affirmative actions demonstrated a sufficient probability that it was going to violate the ordinance; and (3) the ordinance was not preempted because it did not conflict with the DNR's authority to regulate groundwater withdrawal. Further, we conclude that although the court improperly placed the burden on Carlin Club to show that equitable factors precluded the issuance of a prospective injunction, on this record the only reasonable conclusion is that the court's decision to issue an injunction was equitable.
¶59 However, we conclude that the circuit court erred by finding the Association had standing and therefore not dismissing it from this case. WISCONSIN STAT. § 59.69(11) does not grant authority to the Association to maintain an enforcement action, as it does not own any real property in the district affected by the regulation it sought to enforce. Accordingly, we affirm the court's grant of summary judgment in part, reverse in part, and remand for the court to dismiss the Association as a party to this action.
¶60 No WIS. STAT. RULE 809.25(1) costs are awarded to either party.
By the Court. -Judgment affirmed in part; reversed in part and cause remanded with directions.

In this opinion, the term "Landowners" refers to all seven of the individual owners of riparian property and, when used in relation to arguments and litigation joined by the Association, to all plaintiffs-respondents.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

We note that both sides frame these first two issues in terms of standing; that is, they dispute whether the Association and the Landowners had "standing under" Wis. Stat. § 59.69(11) to bring their enforcement action against Carlin Club. However, as we explain further below, see infra ¶20, we frame this issue as a matter of statutory interpretation rather than as a matter of standing.

Steven Kosnick, another forty-percent owner of Carlin Club, testified in his deposition that Superior Springs was an "operating company for Carlin Club" whose membership and ownership interests were "all the same" as that of Carlin Club.

We note that, on appeal, Carlin Club does not challenge the circuit court's finding that its proposed use of its property would be in violation of Vilas County zoning ordinances. Stated differently, Carlin Club does not develop any argument that its proposed use of its property would be permissible pursuant to the legal, nonconforming uses of the Lodge property as a resort, bar and restaurant.

Carlin Club also cites an unpublished per curiam opinion in support of his assertion that a party seeking to bring an enforcement action under Wis. Stat. § 59.69(11) must show that they have been "specially damaged." This citation is in violation of Wis. Stat. Rule 809.23(3)(a), which prohibits the citation of unpublished opinions except in limited circumstances not applicable here. We admonish Carlin Club's attorney that future violations of the rules of appellate procedure may result in sanctions. See Wis. Stat. Rule 809.83(2).

It is undisputed that the Association is an organization whose mission is "directed at the protection of the waters and environment of Carlin Lake."

Wisconsin Stat. § 59.97(11) (1979-80), the statute at issue in Columbia County v. Bylewski , 94 Wis. 2d 153, 288 N.W.2d 129 (1980), was "the predecessor to Wis. Stat. § 59.69(11)." Forest Cty. v. Goode , 219 Wis. 2d 654, 671, 579 N.W.2d 715 (1998).

It is undisputed that Carlin Club was not required to seek a DNR permit, as it did not intend to withdraw more than 100,000 gallons of water per day. See Wis. Stat. § 281.34(2). As such, the DNR did not review any permit application in this case.