# COURT OF APPEALS
## DECISION
## DATED AND FILED

## July 13, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.    2019AP1374**
**2020AP702**

Cir. Ct. Nos.  2018CV175
2019PR69

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT III**

NO. **2019AP1374**

KIMBERLY WINTER,

PLAINTIFF-APPELLANT,

V.

JAMES WINTER,

DEFENDANT-RESPONDENT.

_____

NO. **2020AP702**

IN RE THE ESTATE OF AUGUSTUS POCIUS WINTER:

KIMBERLY WINTER,

APPELLANT,

V.

**JAMES WINTER,**

**RESPONDENT.**

---

APPEAL from an order of the circuit court for Oneida County: MICHAEL H. BLOOM, Judge. *Appeal dismissed.*

APPEAL from an order of the circuit court for Oneida County: MICHAEL H. BLOOM, Judge. *Reversed and cause remanded with directions.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. In these consolidated appeals, Kimberly Winter appeals an order dismissing her civil case against James Winter, and she also appeals an order denying her petitions for formal and special administration of the Estate of Augustus Pocius Winter ("the Estate").[1]  In both cases, Kimberly sought to contest the validity of a quitclaim deed that purportedly transferred real property in Oneida County from Kimberly's father, Augustus Pocius Winter, to Kimberly's brother, James Winter.[2]  In Kimberly's civil case, the circuit court concluded that it lacked subject matter jurisdiction over Kimberly's claims because a Wisconsin probate court would have exclusive jurisdiction over those claims.  Kimberly then

---

[1]  Kimberly's appeal in her civil case was assigned case No. 2019AP1374, and her appeal in her probate case was assigned case No. 2020AP702.

[2]  Because some of the parties share a surname, we refer to them individually by their first names.

filed petitions for formal and special administration of the Estate, and the court denied her petitions, concluding that previous litigation in California barred Kimberly's claims under the doctrine of issue preclusion.

¶2     On appeal, Kimberly argues, among other things, that the circuit court erred when it failed to grant her petition for special administration of the Estate and that the court prematurely considered the matter of issue preclusion before appointing a special administrator.  We agree and reverse the court's decision to deny Kimberly's petition for special administration, and remand for the court to appoint a special administrator.  Because the appointment of a special administrator will invariably allow Kimberly to contest the validity of the quitclaim deed, Kimberly's appeal in her civil case is moot, and we dismiss that appeal.

## BACKGROUND

¶3     On March 1, 1989, Augustus and Marion Winter executed the Winter Family Trust Agreement ("the Trust"), naming themselves as trustees and beneficiaries of the Trust.  Augustus and Marion also named their son James and their daughter Kimberly as successor co-trustees.  On the same day, Augustus executed a will that distributed the residue of his estate upon his death to the Trust, via its acting trustee.  Augustus nominated Marion as the executor of his will, and he nominated Kimberly and James as successor co-executors.

¶4     Shortly thereafter, Marion became incapacitated after suffering injuries in a car accident.  Marion has been the subject of a conservatorship in California since at least 1996, and James has served as Marion's conservator since 2009.  In August 2010, Augustus passed away in San Diego County, California,

where he and Marion resided. The Estate was never administered in California because a California court determined that either Marion already owned all of Augustus's property at the time of his death or the property was previously transferred to the Trust, of which Marion was the remaining primary beneficiary.

¶5 Following Augustus's death, Kimberly and James were involved in two probate cases in California regarding the Trust and Marion's conservatorship. The cases involved interrelated issues regarding James's duties as co-trustee of the Trust and his duties as Marion's conservator. In relation to these two cases, James filed an accounting as Marion's conservator, and Kimberly objected to this accounting. Kimberly argued, among other things, that James neglected to account for real property in Oneida County, Wisconsin, for the benefit of Marion's conservatorship, which she said belonged to Augustus at the time of his death.

¶6 After Kimberly's objection, James recorded a quitclaim deed on September 22, 2015, with the Oneida County Register of Deeds that purportedly transferred the real property in Oneida County from Augustus to James. According to the deed, Augustus personally drafted the quitclaim deed and executed it before a Wisconsin notary on February 4, 2008. James later explained in a declaration to the California court that his father individually owned the Oneida County property and that the property was never included in the Trust, nor did Marion ever possess any ownership rights to the property. James stated that Augustus transferred the property to him in 2008 and that he became the sole owner of the property at that time. James reaffirmed these statements in a later hearing and further testified that sometime before 2012, he told Kimberly about the transfer of the property.

¶7    On November 16, 2017, the California court issued an order approving James's accounting. Regarding the Oneida County property, the court stated:

> As to the objection raised by Kimberly Winter that the Conservator has entirely neglected his duty to address the marshaling of personal and real property in the state of Wisconsin that should be held for the benefit of the Conservatee, the Court found and stated on the record "There is no evidence to convince the Court that the Wisconsin property should be part of the conservatorship estate or any other estate. Apparently it is Mr. Winter's, and nobody has rebutted that successfully in my opinion. So the Court doesn't expect Mr. Winter to account for the property, because he owns it individually. That request is denied to the extent there is a request or objection."

¶8    Kimberly subsequently commenced a civil action against James in Wisconsin, seeking a declaration of the parties' interests in the Oneida County property. Kimberly alleged in her amended complaint that James obtained the property fraudulently. She further alleged that records from Marion's nursing care show that Augustus was in California with Marion on February 4, 2008, the day he purportedly executed the quitclaim deed in Wisconsin. Kimberly also alleged that Augustus kept a calendar and that he did not document any travel or indicate being present in Wisconsin in February 2008. Kimberly further alleged that Augustus continued paying the property taxes, property insurance, and utility bills for the Oneida County property until his death. Alternatively, Kimberly alleged that Augustus lacked the capacity to execute the quitclaim deed.

¶9    James moved to dismiss Kimberly's complaint. He argued, among other things, that Kimberly lacked standing to commence the action on behalf of the Trust. He also argued that the California probate cases barred Kimberly's

claim that Augustus owned the Oneida County property under the doctrines of claim and issue preclusion.

¶10 The circuit court concluded that Kimberly's claims were not barred by claim and issue preclusion because the California court did not have jurisdiction to declare the rights of real property in Wisconsin. The court concluded, however, that it lacked subject matter jurisdiction because Wisconsin probate courts would have exclusive jurisdiction over Kimberly's claims. The court explained that if Augustus did not deed the Oneida County property to James, as Kimberly claimed, then Augustus owned the property at the time of his death and the property could only be transferred from the Estate to the Trust through probate. The court dismissed Kimberly's complaint, and Kimberly appealed.

¶11 Shortly after filing the notice of appeal in her civil case, Kimberly initiated a probate action through a petition for formal administration under WIS. STAT. § 856.07 (2019-20),[3] requesting that she be appointed as personal representative of the Estate. Kimberly also subsequently filed a petition for special administration under WIS. STAT. § 867.07, requesting that she be appointed as a special administrator of the Estate in order to prosecute a declaration of interest action to determine the validity of the quitclaim deed that purportedly transferred the Oneida County property. Kimberly alleged that she was an interested person because she was "a named co-personal representative in the decedent's last will." Kimberly clarified to the circuit court that she sought to

---

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

either be appointed as a personal representative under her petition for formal administration or be appointed as a special administrator under her petition for special administration. In either instance, an appointment would grant her the authority to pursue claims related to the Oneida County property on behalf of the Estate.

¶12 James objected to both of Kimberly's petitions and argued, among other things, that the statute of limitations, issue preclusion, and laches barred Kimberly's claims that Augustus owned the Oneida County property. In response to James's objections, Kimberly argued that the circuit court should not yet consider James's defenses because Kimberly was only "asking for a court representative to be appointed to bring the lawsuit." Kimberly acknowledged that James's objections would be "relevant to the lawsuit" and that James could "raise those issues in the lawsuit as defenses." She asserted, however, that "nothing in the probate code, especially the special administration code, requires us to prove the lawsuit today; just to get a representative appointed to file the lawsuit."

¶13 In responding to James's objections, the circuit court recognized that James had previously raised issue preclusion in Kimberly's civil case and that the court rejected his argument in that regard. The court believed, however, that James had presented new law regarding his issue preclusion argument in his objections to the petitions in the probate case. Relying on this additional authority, the court concluded that "a California court has in personam jurisdiction over the parties relative to real estate located outside of California in the context of this case." Thus, the court believed that it had incorrectly concluded in Kimberly's civil case that the California probate court lacked jurisdiction for purposes of issue preclusion.

7

¶14     Based on the circuit court's belief that a California court had jurisdiction over the real estate in Wisconsin, and based on the November 16, 2017 California court order, the court concluded that issue preclusion barred Kimberly's probate claims regarding Augustus's ownership of the Oneida County property.[4]  The court also concluded that it did not need to appoint a personal representative to bring an action if it would later dismiss that action.  The court did not believe that any further discovery would have an impact on the court's ruling, and it therefore denied Kimberly's petitions for formal and special administration.  Kimberly subsequently appealed the denial of her petitions.  Recognizing common issues between Kimberly's civil and probate cases, we ordered that the two appeals be consolidated.

## DISCUSSION

¶15     At issue in case No. 2020AP702 is whether the probate court erred in denying Kimberly's petitions for formal and special administration by applying issue preclusion (or claim preclusion) before appointing a personal representative or special administrator.  Resolution of that issue requires us to interpret the statutes relevant to petitions for formal and special administration and to apply the statutes to the facts of this case.  The circuit court's interpretation and application of a statute present questions of law that we review de novo.  ***Bell v. Neugart***, 2002 WI App 180, ¶15, 256 Wis. 2d 969, 650 N.W.2d 52.  For the reasons that

---

[4] The parties dispute whether the circuit court denied Kimberly's petitions based on claim or issue preclusion.  For our purposes, the distinction is irrelevant because we conclude that neither claim preclusion nor issue preclusion was ripe for the court to consider.

follow, we conclude the probate court erred by failing to appoint a special administrator and by prematurely considering James's defenses.

¶16    As relevant to this appeal, WIS. STAT. § 867.07(6) provides that a court may appoint a special administrator if it appears that: (1) a person has died; (2) the court would have jurisdiction for the administration of the person's estate; (3) a cause of action exists for or against the decedent or the decedent's estate; and (4) some act must be performed before letters can be issued to a personal representative. We conclude that Kimberly has met each of these conditions for the appointment of a special administrator.

¶17    First, Augustus passed away on August 24, 2010. Second, the circuit court would have jurisdiction over the administration of a portion of the Estate because if Kimberly prevails on her claims, Augustus would have owned the real property in Oneida County at the time of his death. *See* WIS. STAT. § 856.01(2). Third, Kimberly's petition for special administration contends that a cause of action exists for the Estate because Kimberly questions the validity of the quitclaim deed that transferred the Oneida County property from Augustus to James. Fourth and finally, it appears necessary to prosecute that cause of action "before letters can be issued to a personal representative" because the Estate currently has no property to be distributed. As James attested, the Estate has not been probated in California because "everything [Augustus] owned at death was already owned by Marion Winter or had previously been transferred to the Winter Family Trust." Similarly, a Wisconsin court cannot administer any portion of the Estate until Kimberly shows that Augustus has property in Wisconsin. *See* § 856.01(2). Thus, a determination must be made regarding the validity of the

9

quitclaim deed before letters can be issued to a personal representative, and James does not argue otherwise.

¶18    James does not address WIS. STAT. § 867.07(6).  Instead, he argues that Kimberly cannot petition for special administration because she "has no claim against the estate" and "no direct interest in the estate."  James contends that Augustus's will distributes Augustus's estate to the Trust.  James further contends that because Marion is still alive, and she is still the direct beneficiary of the Trust, Kimberly only has a contingent beneficiary interest in the Trust.

¶19    We disagree and conclude that Kimberly has standing to file a petition for special administration.  Any person who has standing to petition for the administration of an estate under WIS. STAT. § 856.07 may petition for the appointment of a special administrator, and the waiting periods under § 856.07 do not apply.  *See* WIS. STAT. § 867.09.  Section 856.07(1) provides that "any person named in the will to act as personal representative or … any person interested" may "[p]etition for administration of the estate of a decedent."  Therefore, "any person named in the will to act as personal representative" may petition for the appointment of a special administrator.  *See* §§ 856.07(1) and 867.09.

¶20    As discussed earlier, Augustus named Marion as the executor of his estate.  Because Marion cannot serve as the executor due to her incapacity, however, Kimberly and James are the successor co-executors named in Augustus's will.  Although Kimberly was not technically named as a "personal representative," we do not discern any difference between a person named as an "executor" under Augustus's will and a "person named in the will to act as personal representative."  Under Augustus's will, a co-executor "shall have all of the powers necessary to deal with [Augustus's] property," including "the

10

administration of [Augustus's] estate." Likewise, under Wisconsin law, a "personal representative" is the person who administers a decedent's estate. *See* WIS. STAT. § 857.03(1). Because Kimberly was named as a co-executor of Augustus's will, she is a "person named in the will to act as personal representative," and, therefore, she has standing to petition for special administration under WIS. STAT. § 867.07(6).

¶21 James also argues that if the Estate had any claim, the Trust would own that claim. James argues that under California law, co-trustees must act unanimously, and therefore Kimberly cannot petition for formal or special administration without his consent. He acknowledges, however, that the Estate has not been probated; therefore, no claim has been distributed from the Estate to the Trust. Moreover, Kimberly also filed the petition for special administration as the co-personal representative of the Estate, not as the co-trustee of the Trust. James fails to cite any legal authority that a co-executor or a co-personal representative must act in concert in this kind of situation. It seems axiomatic that, in circumstances such as here, a co-executor can petition for special administration of an estate and pursue a claim against the other executor in his or her personal capacity without obtaining the other executor's consent.

¶22 In a California case involving analogous facts, an executor filed an action against her co-executor brother to "obtain a judgment canceling and declaring null and void a certain written instrument … purporting to be a deed executed by the deceased, and conveying to the defendant herein a certain piece or parcel of land, and decreeing that said property belongs to said estate." *Stohr v. Stohr*, 82 P. 777, 778 (Cal. 1905). On appeal, the defendant co-executor argued that the judgment was erroneous based on "the principle that one executor cannot

11

maintain an action against his co-executor for exclusive possession of property of the estate." *Id.* The Supreme Court of California rejected that argument and explained that

> this principle does not apply to the case at bar. The plaintiff sued the defendant in his individual capacity, and this phase of the case was not changed by the fact that defendant afterwards became an executor. The action is not by one executor to recover from a co-executor exclusive possession of property admitted by both to be property of the estate. It is an action by an execut[or] to recover what she claims to be property of the estate from the defendant, who asserts that such property belongs to him in his individual capacity, and is not an asset of the estate. The plaintiff is the proper person to maintain the action; and if the alleged cause of action is well grounded and the land in question ought to be decreed to be the property of the estate, the defendant cannot avoid a trial of the merits and hold onto the property upon the ground that because he was one of the executors he cannot be sued.

*Id.*

¶23 Similar to the plaintiff in *Stohr*, Kimberly seeks to file an action on behalf of the Estate to obtain real property that James purportedly acquired in his personal capacity. James has a personal interest in keeping the Oneida County property for himself, rather than allowing the property to pass to the Estate. Thus, it would be absurd to require Kimberly to obtain James's consent in this situation. Kimberly's status as a co-executor does not prevent her from petitioning for special administration of the Estate.

¶24 James next contends that the circuit court had discretion to deny Kimberly's petitions under WIS. STAT. § 868.01(5), based on the factors discussed in *Dennis v. Bayfield County*, 161 Wis. 2d 644, 652-53, 468 N.W.2d 736 (Ct. App. 1991). This argument fails because § 868.01(5) governs applications to

12

open an original probate, but Kimberly has not sought to open an original probate of the Estate. Instead, she seeks to first determine the validity of the quitclaim deed. The need for an original probate in either California or, as an ancillary matter in Wisconsin, only arises if Kimberly prevails on her claims regarding the quitclaim deed.[5]

¶25 Finally, we must determine whether the circuit court could consider claim or issue preclusion before appointing a special administrator. Kimberly argues that issue preclusion was not ripe for the court to consider because no claim had been asserted. "The doctrine of ripeness requires that, for an action to be justiciable, the facts of a case must be sufficiently developed to allow a conclusive adjudication." *Carlin Lake Ass'n v. Carlin Club Props., LLC*, 2019 WI App 24, ¶35, 387 Wis. 2d 640, 929 N.W.2d 228. "The basic rationale of the ripeness doctrine is to prevent the courts through the avoidance of premature adjudication from entangling themselves in abstract disagreements over administrative or legislative policies." *Tooley v. O'Connell*, 77 Wis. 2d 422, 439, 253 N.W.2d 335 (1977).

---

[5] The circuit court may ultimately exercise its discretion and deny a request to open an original probate. *See Dennis v. Bayfield Cnty.*, 161 Wis. 2d 644, 652-53, 468 N.W.2d 736 (Ct. App. 1991). Such a possibility, however, does not preclude a special administrator from contesting the validity of the quitclaim deed and obtaining a decision on the matter. Moreover, even if the court could consider the factors discussed in *Dennis*, the "relative rights of the parties in interest" in this case are strong. *See id.* at 653. A Wisconsin court must determine the validity of the deed and determine proper ownership of the Oneida County property. *See Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 287 (5th Cir. 1987) ("A local action involving real property can only be brought within the territorial boundaries of the state where the land is located."); *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 449-50 (2d Cir. 2000) ("Under the local action doctrine, courts may not exercise jurisdiction over any 'local' action involving real property unless the property at issue is found within the territorial boundaries of the state where the court is sitting.").

13

¶26     Here, the circuit court prematurely concluded that Kimberly's potential claims on behalf of the Estate were barred by claim or issue preclusion. Kimberly's petition for special administration sought the appointment of a special administrator to file "a lawsuit to determine the validity of that certain deed purportedly conveying a parcel of real estate located in Oneida County from the decedent as grantor to James Winter as grantee." Kimberly did not have an opportunity to make any factual allegations regarding the lawsuit, nor did she assert any specific claims that the special administrator would file.

¶27     Issue preclusion requires a court to consider whether the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in a previous action. *See **Munger v. Seehafer***, 2016 WI App 89, ¶60, 372 Wis. 2d 749, 890 N.W.2d 22. Similarly, claim preclusion requires a court to consider whether an identity between the causes of action in the two suits exists. ***Northern States Power Co. v. Bugher***, 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995). Kimberly has a right to support her positions in regard to these questions. WISCONSIN STAT. § 867.07(6), however, does not require that a petition prove that an issue or fact was not litigated in a previous action, nor must it prove a lack of identity between causes of action. In this case, without appointing a special administrator to first file a claim and make factual allegations supporting the claim, the circuit court could not resolve these issues. Indeed, the court did not analyze these requirements for either issue or claim preclusion.

¶28     James argues that claim preclusion was ripe for the circuit court to consider because Kimberly had five years to litigate and investigate any claims and issues in the California litigation and, therefore, she has no right to discovery in her Wisconsin action. Relying on ***Kruckenberg v. Harvey***, 2005 WI 43, ¶62,

14

279 Wis. 2d 520, 694 N.W.2d 879, James also suggests that claim preclusion is always ripe for a court to consider because a court does not need to engage in a fundamental fairness analysis when considering claim preclusion.

¶29    We reject James's arguments.   Even if we could assume that Kimberly had an opportunity to investigate and contest the validity of the quitclaim deed in the California litigation, those facts are not relevant to determining whether claim or issue preclusion were ripe for the Wisconsin circuit court to consider.  Without first allowing a special administrator to make factual allegations and undertake any necessary discovery, the court lacked the necessary facts to analyze whether issue or claim preclusion applied.  Moreover, although claim preclusion does not require a fundamental fairness analysis, *see Kruckenberg*, 279 Wis. 2d 520, ¶62, *Kruckenberg* does not stand for the proposition that claim preclusion is always ripe for a circuit court to consider.

¶30    We conclude that claim and issue preclusion were not ripe for the circuit court to consider.   Therefore, we reverse the court's decision to deny Kimberly's petition for special administration and remand for the court to appoint a special administrator.[6]  James may raise defenses after the special administrator has filed a claim.

¶31    Because we reverse the circuit court's decision in Kimberly's probate case for the reasons stated herein, Kimberly's appeal in her civil case is moot.  "[A] case is moot when a determination is sought upon some matter which,

---

[6] Because we agree that issue and claim preclusion were not ripe for the circuit court to consider, we do not address Kimberly's other arguments regarding the circuit court's competency to consider issue preclusion or whether issue preclusion applies in this case.

when rendered, cannot have any practical legal effect upon a then existing controversy." ***Milwaukee Police Ass'n v. Milwaukee***, 92 Wis. 2d 175, 183, 285 N.W.2d 133 (1979). Once appointed, a special administrator may file an action contesting the validity of the quitclaim deed that transferred the Oneida County property to James. Kimberly's civil case sought only to contest the validity of the quitclaim deed; therefore, her civil case would be duplicative and would have no practical legal effect upon the controversy. Given that Kimberly's civil appeal is moot, we dismiss the appeal in her civil case.

*By the Court.*—Appeal dismissed; order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.